PENTAFLEX, INC., Appellant,

v.

EXPRESS SERVICES, INC., et al., Appellees.

[Cite as *Pentaflex v. Express Services, Inc.* (1998), 130 Ohio App.3d 209.]

Court of Appeals of Ohio,
Second District, Clark County.

No. 98 CA 18.

Decided Oct. 2, 1998.

**211**

*Leo F. Krebs,* for appellant.

*David A. Kadela* and *Alison M. Day,* for appellees.

FAIN, Judge.

Plaintiff-appellant Pentaflex, Inc., appeals from a summary judgment rendered against it on its complaint for a declaratory judgment. Pentaflex contends that the trial court erred by rendering summary judgment in favor of the defendants, by failing to rule on its motion to amend its complaint, and by failing to determine whether insurance obtained by the defendants provided it with coverage for an employer intentional tort.

We conclude that the trial court did not err by rendering summary judgment. We also conclude that the trial court did not err by failing to make a determination regarding insurance coverage, because that issue was not made out by the pleadings. Finally, we presume that the motion for leave to amend the complaint was denied despite the fact that the trial court did not expressly rule upon the motion, and we conclude that the denial of the motion for leave to amend was within the trial court's discretion; therefore, the trial court's failure to issue a ruling was not error. The judgment of the trial court is affirmed.

I

Plaintiff-appellant Pentaflex, Inc., is an Ohio corporation, engaged in the business of metal stamping, with its principal place of business located in

Springfield, Ohio. Defendant-appellee Express Services, Inc., is a temporary employment service company based in Oklahoma. Express Services provides temporary personnel to business and industry. Defendant-appellee Gleam, Inc., is a franchise of Express Services, located in Springfield, Ohio, owned and operated by Larry Hill.

Pentaflex began using personnel provided by Express Services in 1989. Sometime thereafter, Pentaflex requested that Express Services provide it with an indemnification agreement regarding injuries to employees provided by Gleam. Larry Hill obtained a form from Express Services, which was a "standard indemnity agreement" used by Express Services. The parties executed an indemnity agreement, dated May 7, 1989, which provides as follows:

"Express Services, Inc. * * * does hereby agree to indemnify Pentaflex Inc. * * * (hereinafter called Client) under the following terms and conditions.

"Whereas Express Services is desirous of furnishing temporary personnel to the Client for consideration as agreed upon between the parties; and whereas the Client is desirous of obtaining temporary personnel from Express Services from time to time;

"It is HEREBY agreed by and between Express Services and Client that Express Services has procured, and will maintain in effect throughout the life of this Agreement, Workers' Compensation Insurance in full limits as required by statute, and Employers Liability with a limit of $1,000,000 covering temporary personnel assigned to Client hereunder. Express Services agrees to indemnify, hold harmless, and defend Client, its agents, employees, officers, or affiliated entities against and in respect of any and all claims, demands or losses for Bodily injury or Disease to the Express Services Temporary Personnel caused by or resulting from the work performed for Client to the limit of the Worker's Compensation and Employers Liability Insurance carried by Express Services.

"Express Services agrees to maintain Comprehensive General Liability Insurance in the combined single limit of $1,000,000 per occurrence for Bodily Injury or Property Damage to include contractual liability coverage for the indemnity and hold harmless provisions of this agreement.

"Express Services assumes and agrees to indemnify Client for losses which Express Services is legally obligated to pay which are covered by the above insurance. However, this does not include losses resulting from: work being performed in a reasonable, prudent manner by Express Services Temporary Personnel and/or as instructed by Client; losses resulting from willful misconduct, intentional acts or negligence of the Client (except for losses covered by Express Services Workers' Compensation Insurance); injury to Client's employees; operations of any motor vehicle licensed for highway use; or for damage of

machinery, equipment, or materials in the care, custody or control of an Express Services employee."

In response to a letter from Pentaflex's insurance agent seeking clarification of the agreement, the risk management director of Express Services sent a letter explaining that the fifth paragraph of the agreement applied only to the comprehensive general liability insurance referred to in the fourth paragraph of the agreement.

According to Express Services, the indemnity agreement was not the sole writing executed by the parties with respect to responsibility for injuries and related expenses. Apparently, Express Services and Gleam provided Pentaflex with weekly group time sheets, which contained the following indemnity language:

"3. It is agreed that client will indemnify Express Services and Express Services employees for: Injuries incurred by client's employees in the course of their employment; losses resulting from work performed by Express Services employees in a reasonable, prudent manner and/or as instructed by client; and losses resulting form willful misconduct, intentional or negligent acts by the client (except for losses covered by Express Services' Workers' Compensation Insurance).

"* * *

"6. It is agreed that the Client will furnish a suitable place for Express Services employees to work which shall comply with all laws and ordinances related to occupational health and safety."

According to Express Services, these weekly time sheets also stated that "Client's Signature indicates acceptance of the terms and conditions on the reverse side."

In April 1992, Express Services assigned Charles Jackson as a temporary worker at Pentaflex. About a month later, Jackson was injured while working at Pentaflex when part of his right hand and arm were severed by a hydraulic press. Jackson sued Pentaflex, Gleam, and Express Services, alleging negligence and intentional tort claims. In 1994, summary judgment was rendered in favor of both Gleam and Express Services with respect to Jackson's negligence and intentional tort claims. The trial court also dismissed Jackson's negligence claim against Pentaflex, leaving only his intentional tort claim against Pentaflex for trial. The record does not reveal the outcome of that case.

In February 1993, Pentaflex brought this declaratory judgment action against both Express Services and Gleam. Pentaflex alleged that the indemnity agreement required Express Services and Gleam to "indemnify, hold harmless and defend" it in the civil action brought by Jackson. Gleam and Express Services

filed a motion for summary judgment in April 1996. The motion for summary judgment was multifaceted. Express Services and Gleam claimed that the complaint of Pentaflex should be dismissed because (1) the indemnity agreement provided to Pentaflex violated public policy, (2) the indemnity agreement did not expressly waive immunity from common law liability as provided by the workers' compensation laws (R.C. Chapter 4123) and Section 35, Article II, of the Ohio Constitution, (3) the indemnity agreement was superseded by the weekly group time sheets provided to Pentaflex, and (4) the liability for which Pentaflex sought indemnification occurred outside the employment relationship.

The trial court first denied the motion for summary judgment, stating only that genuine issues of material fact existed. Express Services and Gleam moved the court for a reconsideration of its denial of their motion for summary judgment. Thereafter, in September 1996, Pentaflex filed a motion for leave to amend its complaint to include a claim for reformation of contract and estoppel.

In January 1998, the trial court filed an entry granting summary judgment in favor of Express Services and Gleam. The entry, in its entirety, states as follows:

"This cause came to be heard on the motion of the Defendants, for a reconsideration of their motion for summary judgment granting dismissal of the action.

"The Court having considered the pleadings, affidavits, and arguments of counsel, and there being no genuine issues as to material facts, and the Defendant being entitled to a judgment granting the relief prayed for as matter of law, it is hereby

"ORDERED that the motion for summary judgment be and is hereby granted and the case is dismissed.

"Costs to the Plaintiff."

From this judgment, Pentaflex appeals.

## II

Pentaflex's first assignment of error states:

"The trial court erred in granting summary judgment in favor of the appellee."

Pentaflex contends that the trial court erred by rendering summary judgment in favor of Express Services and Gleam. Pentaflex argues that genuine issues of fact exist in regard to every issue raised by Gleam and Express Services in the motion, so that summary judgment was inappropriate.

▆ Although we are not favored with the court's reasoning in deciding to grant summary judgment, our review of that decision is *de novo*. *Koos v. Cent. Ohio Cellular, Inc.* (1994), 94 Ohio App.3d 579, 588, 641 N.E.2d 265, 271–272. "Pursuant to Civ. R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor." *Zivich v. Mentor Soccer Club, Inc.* (1998), 82 Ohio St.3d 367, 369–370, 696 N.E.2d 201, 204.

▆ We conclude that Gleam and Express Services are entitled to judgment as a matter of law because the indemnification provision upon which Pentaflex relies is not sufficient to overcome their statutory and constitutional immunity from liability resulting from injury to an employee. R.C. 4123.74; Section 35, Article II, Ohio Constitution.

▆▆ It is not disputed that Express Services and Gleam complied with the requirements of the Workers' Compensation Act or that Jackson was their employee for purposes of workers' compensation insurance. Pursuant to *Kendall v. U.S. Dismantling Co.* (1985), 20 Ohio St.3d 61, 20 OBR 360, 485 N.E.2d 1047, an employer in compliance with the workers' compensation laws of Ohio does not surrender its statutory and constitutional immunity from suits arising out of employment absent an express and specific waiver of that immunity. *Id.*, paragraph two of the syllabus. The waiver must refer specifically to this type of immunity. *Id.* at 65, 20 OBR at 363, 485 N.E.2d at 1051. Absent an express waiver that refers specifically to the immunity arising from the workers' compensation statute and constitutional provision, an indemnification agreement between the employer of the injured person and a third party may not override the immunity. *Id.*

The indemnification provision upon which Pentaflex relies is neither artful nor clear, but appears to have been intended to make any proceeds from the workers' compensation insurance or employers' liability insurance that Gleam and Express Services agree to carry available to indemnify Pentaflex for any liability that it may incur to a loaned employee. In any event, the indemnification provision does not refer specifically to the immunity arising from the workers' compensation statute and constitutional provision. Therefore, pursuant to *Kendall, supra*, the indemnification provision is not sufficient to overcome the immunity to liability of Gleam and Express Services.

Pentaflex argues that the immunity arising from the workers' compensation statute and constitutional provision is not available to Gleam and Express Services because its liability arises from the law of employer intentional tort,

216

which is outside the scope of workers' compensation immunity. The flaw in this argument is that we are not concerned with Pentaflex's immunity, but with the immunity of Gleam and Express Services. Gleam and Express Services did not commit an act exposing Jackson, their employee, to a substantial certainty of injury. Their liability would arise out the fact that Jackson was their employee; consequently, they are immune unless they waive their immunity by specific reference to the immunity.

Because we hold that Gleam and Express Services enjoyed immunity from liability under the workers' compensation statute and constitutional provision, and did not waive that immunity, we conclude that the trial court correctly rendered summary judgment in their favor.

Pentaflex's first assignment of error is overruled.

### III

Pentaflex's second assignment of error is as follows:

"The trial court erred in failing to consider whether a contractual obligation to obtain employer's liability insurance required coverage for an employer intentional tort."

Pentaflex appears to be contending that because the indemnity agreement required Express Services and Gleam to maintain employer's liability insurance in the amount of $1,000,000, the trial court erred when it did not resolve the issue of whether the employer's liability insurance obtained by Express Services and Gleam included coverage for employer intentional torts

However, Pentaflex also admits that the issue of whether the employer's liability policy provided such coverage was not raised in the motion for summary judgment filed by Express Services and Gleam. More important, no claim was set up in Pentaflex's complaint for declaratory judgment based upon an alleged breach of contractual duty to provide insurance coverage. Therefore, we cannot say that the trial court erred by failing to address this issue.

Pentaflex's second assignment of error is overruled.

### IV

Pentaflex's third assignment of error states:

"The trial court erred in failing to rule on a motion to amend the complaint which amendment asked the trial court to declare whether a contractual obligation to obtain employers liability insurance required procurement of insurance covering employer intentional tort claims."

█ Pentaflex contends that the trial court erred because it did not rule on Pentaflex's motion to amend the complaint, which was filed prior to the entry rendering summary judgment.

█ "When a trial court fails to rule upon a motion, it will be presumed that it was overruled." *Gosden v. Louis* (1996), 116 Ohio App.3d 195, 222, 687 N.E.2d 481, 498. Therefore, we must presume that the trial court denied Pentaflex's motion, and determine whether that denial constitutes reversible error. A trial court's denial of a motion to amend a pleading will not be reversed absent an abuse of discretion. *Wilmington Steel Prod. v. Cleveland Elec. Illum. Co.* (1991), 60 Ohio St.3d 120, 122, 573 N.E.2d 622, 624–625. An abuse of discretion connotes more than an error of law or judgment; it implies that the trial court's decision was unreasonable, arbitrary, or unconscionable. *Quebodeaux v. Quebodeaux* (1995), 102 Ohio App.3d 502, 505, 657 N.E.2d 539, 541. A movant must provide prima facie support for the new claims that it seeks to plead. *Wilmington, supra,* syllabus.

We cannot say that the trial court abused its discretion in this case. The motion to amend the complaint was not filed until more than three years after the original complaint was filed. Pentaflex stated that the amendment was necessary in order to raise the issue whether the indemnity agreement required Express Services and Gleam to obtain employers' liability coverage. However, the only evidence offered in support of the motion was a statement that an insurance agent for Pentaflex had testified that employers' liability coverage should have provided coverage for intentional torts. Furthermore, in the answer to the original complaint, Express Services and Gleam specifically denied that they had procured such coverage. Their denial should have alerted Pentaflex to the issue of insurance coverage.

Before Pentaflex sought to amend its complaint to encompass an additional claim for relief based upon an alleged breach of the contractual obligation to provide insurance coverage, Gleam and Express Services had already filed their motion for summary judgment. While proceedings with respect to a motion for summary judgment are ordinarily less onerous than trial—the very reason for providing for motions for summary judgment—they are not free of legal expenses, and those legal expenses are not trivial. Once the parties have briefed a motion for summary judgment, together with the submission of relevant evidentiary material, upon the assumption that the issues framed by the pleadings have been fully addressed in connection with the motion for summary judgment, the trial court may reasonably conclude that it would be unduly burdensome to permit one party to introduce a new claim for relief, potentially requiring new

discovery and the preparation of new evidentiary material and legal arguments, all at substantial expense to the other party.

Pentaflex's third assignment of error is overruled.

## V

All of Pentaflex's assignments of error having been overruled, the judgment of the trial court is affirmed.

*Judgment affirmed.*

BROGAN, J., concurs.

GRADY, J., concurs separately.

GRADY, Judge, concurring.

The indemnity agreement demonstrates no promise by Express Services, Inc. or Gleam, Inc. to indemnify Pentaflex, Inc. for its liability for intentional torts. The promisors, Express Services and Gleam, have merely agreed to indemnify the promisee, Pentaflex, for any liability arising from the promisors' failure to maintain workers' compensation and employer's liability insurance coverages. Workers' compensation does not cover intentional torts. The nature and extent of the promised employer's liability insurance coverage are not defined, but the exclusion of "losses resulting from willful misconduct (or) intentional acts" eliminates any possibility that intentional tort claims are covered or indemnified thereby.

Any reliance on *Kendall v. U.S. Dismantling Co.* (1985), 20 Ohio St.3d 61, 20 OBR 360, 485 N.E.2d 1047, is wholly misplaced. *Kendall* stands for the proposition that an employer may waive its workers' compensation immunity from common-law civil liability to its employees, if it does so expressly. The waiver doctrine cannot create liability where none exists, which is the case here.

I would overrule the second assignment of error on the foregoing basis.