OPINION
 I. Procedural Background
This case has an unnecessarily complicated and lengthy procedural history, due to the filing of many spurious and unauthorized pleadings by Appellants, Ralph and Joyce Marzocco. For the last seven years, the Ellen Bolling Trust has been trying to collect a debt that Ralph Marzocco agreed to pay, based on his mishandling of the trust. Instead of honoring this obligation, Marzocco has engaged in what can only be described as legal terrorism, to prevent the trust from recovering any money.
In 1980, Ralph Marzocco prepared a revocable living trust for Ellen Bolling and designated himself as trustee. The trust was funded in 1980 with $66,677.80. However, by 1983, trust assets were reduced to $10,500. At that time, Marzocco made an unsecured loan to his brother of the remaining trust assets. See Marzocco v. Titus (July 26, 1996), Montgomery App. No. 15747, unreported, 1996 WL 417001, p. 1. Marzocco's mishandling of the trust and unethical conduct as trustee resulted first in his suspension from the practice of law, and ultimately, in his disbarment. See Dayton Bar Assn. v. Marzocco (1994), 71 Ohio St.3d 306; Marzocco v.Titus (1995), 106 Ohio App.3d 112; and Dayton Bar Assn. v. Marzocco
(1997), 79 Ohio St.3d 186.
In 1993, Bolling brought an action in common pleas court to remove Marzocco as trustee and to recover compensatory and punitive damages for his mishandling of the trust. To settle the suit, Marzocco agreed to resign as trustee and to pay the trust $33,500 no later than December 24, 1993. 79 Ohio St.3d at 187. Marzocco did not pay as he had promised, and judgment was subsequently entered against him in April, 1994. Id. At the time Marzocco agreed to the settlement, his only significant asset was an interest in marital premises located at 2569 Clifty Falls Road. See Bolling v. Marzocco (July 9, 1999), Montgomery App. No. 17456, unreported, 1999 WL 9610006, p. 1. However, in February, 1994, Marzocco conveyed his real estate interest to his wife, Joyce, for no consideration. 79 Ohio St.3d at 187.
To set aside this conveyance, Bolling's trust then had to file suit against both Ralph and Joyce Marzocco. Consequently, in March, 1995, the trust filed a complaint, alleging that Ralph Marzocco had fraudulently conveyed property to Joyce. NBD Mortgage Company was added as a defendant because it had a lien on the premises that was recorded in May, 1991.
The fraudulent conveyance action was filed as Case No. 95-820 in Montgomery County Common Pleas Court. After the case was filed, NBD Bank was allowed to intervene, to assert a lien it had recorded on the Clifty Falls property in June, 1994. Subsequently, judgment was entered against the Marzoccos and the half-interest in the property was sold to Ellen Bolling, by and through her guardian, Karen Titus, on November 27, 1996, for $33,000. At that time, the court also found that NBD Mortgage had the best and first lien on the property.
Ultimately, in December, 1997, we vacated the November, 1996 sale and remanded the case to the trial court, based on the court's failure to enter judgment in compliance with Civ. R. 53. See Bolling, By and ThroughHer Guardian, Titus v. Marzocco (Dec. 12, 1997), Montgomery App. Nos. 16406 and 16466, unreported, 1997 WL 761300, p. 4.
Before the sale was vacated, Bolling had assigned her bid to Richard Knostman, the attorney who now represented the trust. As a result, Knostman filed a complaint for partition against the Marzoccos on April 11, 1997. This action was filed as Case No. 97-5310, in Montgomery County Common Pleas Court, and included NBD Mortgage and the Montgomery County Treasurer's Office as defendants. In the complaint, Knostman alleged that he and Joyce Marzocco each owned an undivided one-half interest in the Clifty Falls real estate. He further alleged that the real estate could not be partitioned. Accordingly, Knostman asked that the real estate be sold.
The Marzoccos filed counterclaims against Knostman in Case No. 97-5310 for unpaid taxes and insurance, and for unspecified acts of "abuse of process." In June, 1997, the Marzoccos also filed a third-party complaint against NBD Mortgage, Fifth Third Bank, the Ohio Department of Commerce, and the Montgomery County Treasurer. This complaint was based on Fifth Third's purchase of NBD Bank assets, including the second mortgage on the Clifty Falls property. Allegedly, Fifth Third released the NBD Bank loan and failed to properly record its own mortgage. Consequently, Knostman was able to purchase the one-half interest in the premises subject to the NBD Mortgage lien (the first mortgage), but not subject to the Fifth Third Bank lien (the second mortgage, formerly held by NBD Bank). The third-party complaint demanded judgment only against Fifth Third.
The trial court granted foreclosure in the partition action (Case No. 97-5310) on August 26, 1997. Subsequently, the Marzoccos appealed the foreclosure judgment and some other issues. However, we dismissed the appeals because the trial court had never ruled on the counterclaims. SeeKnostman v. Marzocco (July 24, 1998), Montgomery App. Nos. 16758 and 16818, unreported, 1998 WL 412460. We also noted in our decision that Knostman had dismissed his complaint for partition without prejudice on January 6, 1998. Therefore, when Case No. 97-5310 was remanded to the trial court, the only claims remaining were the Marzoccos' claims against Richard Knostman and the third-party complaint.
In the meantime, the original foreclosure action (Case No. 95-820) was proceeding to judgment following our December, 1997 remand. Another foreclosure order was entered in that case on August 25, 1998, and we affirmed the order on July 9. 1999. See Bolling v. Marzocco (July 9, 1999), Montgomery App. No. 17456, unreported, 1999 WL 9610006. As a result, Ralph Marzocco's half interest in the property was sold on October 9, 1999, to James Powers, for $30,000. Powers then assigned his bid to Richard Knostman on October 20, 1999.
Subsequently, on November 11, 1999, a judgment entry was filed in Case No. 95-820, confirming the sale and ordering the deed and distribution. At that time, the court noted that $29,007 would be paid to NBD Mortgage in partial satisfaction of its lien. The court also held that the Marzoccos still owed NBD Mortgage a balance of $15,452.38. The Marzoccos did not appeal from this decision. On December 14, 1999, the trial court filed a nunc pro tunc entry correcting the amount of the disbursement to NBD Mortgage to $26,684. Again, the Marzoccos made no attempt to appeal. Accordingly, the sale of Ralph Marzocco's half-interest and all issues raised in Case No. 95-820 became final.
As we mentioned, the remaining matters pending in the partition action (Case No. 97-5310) were the Marzoccos' counterclaims and third-party complaint. Knostman moved for summary judgment on the Marzoccos' counterclaims in the partition action in December, 1998. The Marzoccos also moved for summary judgment on the counterclaim, in January, 1999. At the time, the case was being handled by Judge Petzold. However, before Judge Petzold ruled on the motions, the case was transferred to Judge Donovan. The case was then consolidated with Montgomery County Case No. 99-552, which was another foreclosure action that had been filed against the Marzoccos. On June 4, 1999, Judge Frost was assigned to the consolidated cases as a visiting judge.
NBD Mortgage had filed the foreclosure action (Case No. 99-552) against the Marzoccos on February 8, 1999. The basis of NBD's foreclosure complaint was its lien on the premises, due to the 1991 mortgage loan. Also included as defendants (as parties who might claim an interest in the property) were Ellen Bolling, by and through her guardian, Karen Titus, Fifth Third Bank, and the Montgomery County Treasurer. Notably, at the time the action was filed, the original fraudulent conveyance action was still being resolved. Consequently, Richard Knostman was not added as a defendant because the 1996 sale had been set aside, and the October, 1999 sale had not yet taken place. Thus, Knostman had no interest in the property at the time NBD Mortgage filed Case No. 99-552.
In contrast to the fraudulent conveyance and partition actions, Case No. 99-552 sought to foreclose all interests in the Clifty Falls property. When the Marzoccos answered this foreclosure complaint, they filed counterclaims against NBD Mortgage. They also filed cross-claims against Bolling, Fifth Third Bank, and the Montgomery County Treasurer. The counterclaims and cross-claims related to an alleged scheme by Knostman and others to cause the Marzoccos to purchase Knostman's one-half interest in the real estate sale. The Marzoccos had previously made the same allegations several times during the action brought to foreclose Ralph Marzocco's half interest in the property (Case No. 95-820).
According to the Marzoccos, the Ellen Bolling Trust did not have the money to pay for Ralph Marzocco's half interest in the Clifty Falls property when the trust bid at the sheriff's sale in November, 1996. As we mentioned before, the trust then assigned its bid to Richard Knostman. The Marzoccos claimed that Knostman never paid the sheriff the $33,000 sales price of the property. Supposedly, Sheriff Haines issued a deed despite the lack of payment. NBD Mortgage and others then allegedly perpetuated the "scheme" by showing a payment of $31,195.94 on NBD's books (the amount left from the November, 1996 sale after payments of expenses, etc.). And finally, Richard Knostman purportedly committed "extortion" by offering to sell his half-interest in the property for $45,000 to Joyce Marzocco in March, 1997.
After filing the cross-claims and counterclaims, the Marzoccos filed a third-party complaint on March 31, 1999, against the following parties: Ellen Bolling, Fifth Third Bank, the Montgomery County Treasurer, Karen Titus, attorney, John Cumming, Sheriff Gary Haines, Richard Knostman, and Judge Petzold. The third-party complaint made the same allegations about the 1996 sheriff's sale and the events connected to the sale. The only new claims were that Judge Petzold had obstructed justice by overruling and/or failing to rule on various motions and charges of the Marzoccos in Case No. 97-5310.
On August 10, 1999, Judge Frost granted summary judgment in favor of NBD Mortgage in the foreclosure action (Case No. 99-552). In the same entry, Judge Frost also dismissed the third-party complaints against Cumming, Haines, and Judge Petzold. The basis for dismissing the claims against Cumming and Haines was that the third-party complaint failed to allege any proper third-party claim under Civ. R. 14(A). Judge Frost also found the claims against Judge Petzold improper, based on judicial immunity.
Ultimately, on September 15, 1999, Judge Frost entered a judgment entry and decree of foreclosure in Case No. 99-552. The Marzoccos timely appealed from that judgment entry. However, we dismissed the appeal because claims remained pending in the trial court and Judge Frost refused to enter a Civ. R. 54(B) finding. See NBD Mortgage Co. v.Marzocco (May 17, 2000), Montgomery App. No. 18001, unreported.
While the foreclosure entry in Case No. 99-552 was on appeal, the Marzoccos filed an amended third-party complaint without leave of court, on December 2, 1999. The amended third-party complaint raised issues about the events surrounding the November, 1996 sale, and contained the same allegations as those in the third-party complaint that had already been found lacking. Motions to dismiss this complaint were filed by Haines, Cumming, Titus, and Bolling, and were granted in July, August, and September, 2000. However, none of the entries was made a final, appealable order.
After we dismissed the appeal of the foreclosure in Case No. 99-552, the Clifty Falls premises was sold to Richard Knostman for $78,000, on October 27, 2000. The Marzoccos' original counterclaim against NBD Mortgage and an additional counterclaim filed by the Marzoccos in September, 2000, without leave of court, were dismissed on November 15, 2000, due to the Marzoccos' failure to appear for depositions as scheduled. The additional counterclaim had also been filed without leave of court. In this regard, Judge Frost noted that the Marzoccos had continually filed documents without leave of court. Indeed, our review of these cases reveals a veritable blizzard of pleadings by the Marzoccos — most without leave of court.
Following these events, the Marzoccos once more filed a third-party complaint without leave of court. Specifically, on December 1, 2000, they filed a "supplemental" third-party complaint, suing some parties who had previously been named in the foreclosure action, i.e., Titus, Cumming, and Knostman. However, the complaint also named several new parties, including attorneys who had represented parties in the foreclosure action. The new third-party defendants included: Gregory Dunsky (attorney for Gary Haines); Ralph Burnham (attorney for Judge Petzold); C. Robert Swaninger (attorney for the Montgomery County Treasurer); Leo Krebs (attorney for John Cumming); Alan Statman and John Schmidt (attorneys for Fifth Third Bank); Mark Foster (attorney for Richard Knostman); Therese Paul (attorney for Fifth Third Bank); and Christanthy Loizos (who had represented the Ohio Department of Commerce in Case No. 97-5310). Judge Frost, the visiting judge assigned to the foreclosure action, was also named as a third-party defendant in the supplemental third-party complaint.
The supplemental third-party complaint was primarily aimed at Judge Frost and called him a "hatchet man" for the judiciary establishment. Essentially, the Marzoccos complained about how they had been treated by Judge Frost during the litigation. They also again raised claims about the November, 1996 sale of the property.
Subsequently, on December 15, 2000, Judge Frost recused himself. An entry of confirmation was then signed by Judge Gowdown of the Montgomery County Common Pleas Court on December 22, 2000, confirming the sale of the property and ordering deed and distribution. Ultimately, the supplemental third-party complaint against Burnham, Loizos, and Frost was dismissed on January 29, 2001, because the court did not think any set of facts would allow the third-party complaint to be submitted to a jury. The court also noted that the Marzoccos had not even specified a theory of liability against Burnham, Loizos, and Frost.
On February 16, 2001, the case was re-assigned to Judge Frost. Various additional claims were then dismissed, including the supplemental third-party complaints against Cumming, Dunsky, Swaninger, and Krebs. An amended confirmation order was filed on March 21, 2001, and that brings us to the present appeal.
 II. The Assignments of Error
In this appeal, Ralph and Joyce Marzocco challenge orders that the trial court entered on March 20, 2001, in consolidated Cases Nos. 97-5310 and 99-552 (the partition and second foreclosure actions). The orders filed on that date include: 1) an entry denying the Marzoccos' January 29, 2001 "motion" and February 1, 2001 "amended motion" to charge NBD Mortgage with perpetrating a fraud on the court; 2) an entry granting a motion to compel discovery filed by Third-Party Defendant, Karen Titus, against the Marzoccos; 3) an entry granting the motion to dismiss a third-party complaint filed against Gregory Dunsky and C. Robert Swaninger; 4) "final appealable judgment" entries, dismissing the Marzoccos' third-party claims against Judge John Petzold, Judge Gregory Frost, and Ralph Burnham; 5) an entry dismissing the Marzoccos' supplemental third-party complaint against Leo Krebs; and 6) an entry dismissing the Marzoccos' supplemental third-party complaint against John Cumming. A finding of "no just reason for delay" was made regarding the entries in categories 1, 4, 5, and 6.
Although the date listed in the notice of appeal is March 20, 2001, the Marzoccos attached a March 21, 2001 amended entry of confirmation to their notice of appeal. They also noted in their docketing statement that the judgment being appealed was dated March 21, 2001. Therefore, an issue exists concerning whether the Marzoccos intended to appeal the amended entry of confirmation.
According to App. R. 3(D), a notice of appeal "shall designate the judgment, order or part thereof appealed from." The notice of appeal in this case was, by its own terms, confined to the entries filed on March 20, 2001. Nonetheless, we will assume that the Marzoccos also intended to appeal the judgment entered on March 21, 2001. Specifically, App. R.3(F) indicates that notices of appeal may be amended. The Ohio Supreme Court has additionally said that the only jurisdictional requirement for a valid appeal is the timely filing of a notice of appeal. TransamericaIns. Co. v. Nolan (1995), 72 Ohio St.3d 320, syllabus. Consequently, if other defects exist in the notice of appeal, we have discretion to decide what sanctions, if any, to apply. Id.
Since the Marzoccos appear to have intended to appeal the entry filed on March 21, 2001, we will treat the appeal as one from judgments entered on both March 20, 2001, and on March 21, 2001. We note that the parties did brief issues pertaining to the judgments on both dates, and no one objected to the incorrect date on the notice of appeal.
Our review of the entire record reveals that various claims remain pending in the trial court, and that trial is currently set for December, 2001. Therefore, as a threshold issue, we must consider whether the orders in question were final, appealable orders. See, e.g., Anderson v.Sonoco Products Co. (1996), 112 Ohio App.3d 305, 308. Notably, orders must meet the requirements of both R.C. 2505.02 and Civ. R. 54(B) to be appealable. Chef Italiano Corp. v. Kent State University (1989),44 Ohio St.3d 86, syllabus, and Hitchings v. Weese (1997),77 Ohio St.3d 390, 391 (Resnick, concurring). Certain exceptions do exist. For example, we have held that orders granting or denying preliminary injunctions under R.C. 2505.02(B)(4) need not contain Civ. R. 54(B) certifications. See Premier Health Care Serv., Inc. v.Schneiderman (Aug. 21, 2001), Montgomery App. No. 18795, unreported. However, this exception is inapplicable, since the present appeal does not involve a provisional remedy.
Orders dismissing third-party complaints are final orders, but may not be appealed absent a Civ. R. 54(B) certification, if other claims remain pending. State ex rel. Jacobs v. Municipal Court of Franklin County
(1972), 30 Ohio St.2d 239, syllabus. Accordingly, since the orders dismissing the third-party complaints against Dunsky and Swaninger lacked Civ. R. 54(B) certifications, we do not have jurisdiction to consider an appeal of those orders.
Similarly, we lack jurisdiction over interlocutory discovery orders, except in limited situations, like those involving disclosure of privileged materials. See, e.g., Nester v. Lima Mem. Hosp. (2000),139 Ohio App.3d 883, and Radovanic v. Cossler (2000), 140 Ohio App.3d 208. Thus, we lack jurisdiction over the entry granting the motion to compel.
Other March 20, 2001 entries dismissed the Marzoccos' third-party complaints against attorneys (Burnham, Cumming, and Krebs), and judges (Frost and Petzold). Under Jacobs, the dismissal of these complaints is appealable, since the entries contained Civ. R. 54(B) certifications.
The remaining March 20, 2001 entry dismisses motions claiming that NBD Mortgage committed a "fraud" upon the court. Although this entry contains a Civ. R. 54(B) certification, it must still satisfy the requirements of R.C. 2505.02.
Under R.C. 2505.02(B), the following orders are final and may be reviewed:
 (1) An order that affects a substantial right in an action that in effect determines the action and prevents a judgment;
 (2) An order that affects a substantial right made in a special proceeding or upon a summary application in an action after judgment;
 (3) An order that vacates or sets aside a judgment or grants a new trial;
 (4) An order that grants or denies a provisional remedy and to which both of the following apply:
 (a) The order in effect determines the action with respect to the provisional remedy and prevents a judgment in the action in favor of the appealing party with respect to the provisional remedy.
 (b) The appealing party would not be afforded a meaningful or effective remedy by an appeal following final judgment as to all proceedings, issues, claims, and parties in the action.
 (5) An order that determines that an action may or may not be maintained as a class action.
A "substantial right" is defined as "a right that the United States Constitution, the Ohio Constitution, a statute, the common law, or a rule of procedure entitles a person to enforce or protect." R.C.2505.02(A)(1). Under Chef Italiano, "[a] court order which deprives a person of a remedy which he would otherwise possess deprives that person of a substantial right." 44 Ohio St.3d at 88 (citation omitted).
The motions charging NBD with fraud raised an issue about the December 22, 2000 confirmation entry. According to the Marzoccos, the entry indicated that NBD should be paid $19,947.65 following the October, 2000 sale of the Clifty Falls property. However, a mortgage interest statement (Form 1098-2000) showed a balance due of only $15,452.38. As a result, the Marzoccos claimed that NBD Mortgage was trying to perpetrate a fraud on the court by drafting an entry showing a greater balance due. On March 20, 2001, the trial court rejected this argument. In particular, the trial court relied on an affidavit filed by NBD, which indicated that form 1098-2000 referred only to principal due, not interest. The court also noted that the payoff statement attached to NBD's memorandum (reflecting unpaid principal, unpaid interest, and unpaid late charges in a total amount of $19,947.65) was correct.
On consideration, we do not think the entry in question deprived the Marzoccos of a substantial right. Since the Marzoccos presented their "charge" to the trial court, they were free to raise the alleged error on appeal, at such time as they appealed the final judgment in the case. That time has not yet occurred. Specifically, the original confirmation order of December 22, 2000, lacked a Civ. R. 54(B) certification, and was not immediately appealable, since proceedings were still pending in the trial court. The March 21, 2001 judgment amended the earlier confirmation order, but was not appealable, as it also lacked a Civ. R. 54(B) certification.
Generally, orders confirming a sale and foreclosure orders that find the amounts due to claimants are final, appealable orders. See, e.g.,Third Nat. Bank of Circleville v. Speakman (1985), 18 Ohio St.3d 119;Queen City Sav. Loan Co. v. Foley (1960), 170 Ohio St. 383; and OberlinSav. Bank Co. v. Fairchild (1963), 175 Ohio St. 311. However, if claims are still pending in the trial court, the order must have a Civ. R. 54(B) certification to be appealed. As we mentioned, the March 21, 2001 amended confirmation entry did not contain such a certification. As a result, we lack jurisdiction to review that entry. We likewise lack jurisdiction to review the December 22, 2000 confirmation entry until all proceedings have concluded or the trial court issues a Civ. R. 54(B) certification for that entry. We note that appeal after final judgment will be an effective remedy for any mistake in amount on the confirmation entries.
In view of the preceding discussion, we will consider the Marzoccos' assignments of error only to the extent that they relate to entries that are final, appealable orders. The assignments of errors raised by the Marzoccos are as follows:
 I. The trial court erred to the prejudice of the Appellants by refusing to proceed with an adjudication of Appellants' viable counterclaim against Appellees Richard G. Knostman and Ellen W. Bolling — by and through her guardian — Karen Titus, Case No. 97-5310.
 II. The trial court erred to the prejudice of the Appellants by granting Appellees additional time to respond to allegations of the Appellants but not granting Appellants additional time to respond to allegations of the Appellees.
 III. The trial court erred to the prejudice of the Appellants by finding that a junior lienor, holding a one-half interest in the estate can deprive senior lienors, holding entire interests in the subject real estate, of a one-half interest in their holding in the subject real estate.
 IV. The trial court erred to the prejudice of the Appellants in granting Appellee NBD Mortgage Company's motion for summary judgment when genuine issues of material fact remain and when reasonable minds, when construing the evidence most strongly in favor of the nonmoving party, can only conclude that the moving party is not entitled to judgment as a matter of law.
 V. The trial court erred to the prejudice of the Appellants by conducting a fallacious proceeding that was predisposed in favor of Appellees.
 VI. The trial court erred to the prejudice of the Appellants in approving [sic] fraudulent conveyance scheme involving Appellees whereby first Appellee, NBD Mortgage, shamefully caused judicial sale of entire interest (even though having one-half interest) in the subject real estate to second Appellee, Richard G. Knostman, and paying second Appellee one-half of sale proceeds for second Appellee's one-half interest in the subject real estate.
After considering the assignments of error, we find that some lack merit and that we lack jurisdiction over the others. Accordingly, the judgment will be affirmed in part, and the appeal of the remaining matters will be dismissed. An explanation of our decision follows.
 A. Claims against Judges Petzold and Frost
In the first assignment of error, the Marzoccos claim that the trial court erred by refusing to proceed with an adjudication of their "viable" counterclaim against Richard Knostman and Ellen Bolling in Case No. 97-5310. The term "viable" refers to a comment Judge Petzold made when he referred the case to a magistrate on August 31, 1998, for resolution of the pending counterclaims. In referring the case, Judge Petzold observed that under our prior decision in Cases No. 16758 and 16818, the counterclaims "may have some viability."
Contrary to what the Marzoccos infer, this was not an indication that the counterclaims had any validity. Instead, Judge Petzold was simply referring to the fact that we had dismissed the Marzoccos' appeal because counterclaims were still pending in the trial court. See Knostman v.Marzocco (July 24, 1998), Montgomery App. Nos. 16758 and 16818, unreported, 1998 WL 412460, p. 2. Obviously, to the extent the claims had not been resolved, they had viability, i.e., it was still potentially "possible" for the Marzoccos to prevail. Since no trial had yet been held, Judge Petzold would have had no way of knowing, at that point, if the counterclaims had merit.
Moreover, our own decision also did not in any way imply that the counterclaims were valid. To the contrary, we merely found that we lacked jurisdiction over the appeal because the trial court had not yet ruled on the counterclaims. Id.
In any event, the gist of this assignment of error is that Judges Petzold and Frost have "obstructed justice" by failing to timely rule on motions filed by the Marzoccos and by ruling against the Marzoccos on various points. Since these matters generally relate to the dismissal of the third-party complaints against Petzold and Frost (both final, appealable orders), we will consider the assignment of error.
After reviewing the entire record in this case, the record in the other cases involving the Marzoccos, and the allegations in the various third-party complaints, we agree with the trial court that no claims were stated against Judges Petzold and Frost.
[I]n considering a motion to dismiss for failure to state a claim, a trial court "must construe all material allegations in the complaint and all inferences that may be reasonably drawn therefrom in favor of the nonmoving party[.]" * * *
All factual allegations in the complaint, therefore, must be construed as true for purposes of the motion.
* * *
[We then review] a trial court's decision on a motion to dismiss de novo
and, while we need not defer to the trial court's findings, we must, like the trial court, construe the factual allegations in the complaint and all reasonable inferences therefrom in favor of the nonmovant.
Groves v. Dayton Pub. Schools (1999), 132 Ohio App.3d 566, 567-68
(citations omitted).
The various third-party complaints contend that Judges Petzold and Frost have obstructed justice by ruling against the Marzoccos and by failing to rule on various motions. The allegations against Judge Frost are vituperative, in that he is described as a "hatchet man," unfit to be a judge, etc. However, none of the third-party complaints alleges that either judge acted in the absence of jurisdiction.
For many years, Ohio has followed the rule that "a judge is immune from civil liability for acts taken in his judicial capacity when jurisdiction is proper." Kelly v. Whiting (1985), 17 Ohio St.3d 91, 94. See also State ex rel. Fisher v. Burkhardt (1993), 66 Ohio St.3d 189,191. Furthermore, a judge is not deprived of immunity "because the manner in which he acted was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction." 17 Ohio St.3d 91, at paragraph one of the syllabus, following Stump v. Sparkman (1978),435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331.
As we said, the third-party complaints do not allege that the judges acted in the clear absence of jurisdiction. In fact, no such allegations could be made, because both Judges were simply ruling (or allegedly failing to rule) on matters in cases to which they were assigned. Accordingly, the trial court did not err in dismissing the claims against Judges Petzold and Frost.
In view of the preceding discussion, the first assignment of error is overruled.
B. Alleged Error in Ruling on Continuance Request
In the second assignment of error, the Marzoccos contend that the trial court erred by giving the Appellees additional time to respond to various matters, but did not extend the same treatment to the Marzoccos. In this regard, the Marzoccos list instances where extensions of time were given to Gary Haines and Judge Petzold. In contrast, Judge Frost allegedly never ruled on Ralph Marzocco's request for a continuance to respond to a motion for summary judgment filed by NBD Mortgage. To the extent this matter relates to Judge Frost's alleged "obstruction of justice," and to Judge Petzold's actions, we will consider it.
As we just said, judges are not liable for acts taken in their judicial capacity. Even if this were otherwise, the Marzoccos suffered no harm from the trial court's actions. According to the record, NBD Mortgage filed a motion for summary judgment in the foreclosure action (Case No. 99-552) on May 27, 1999. The summary judgment motion was based on requests for admissions that were served on the Marzoccos on April 22, 1999. However, the Marzoccos had never answered the request for admissions. They also never replied to the summary judgment motion.
By local rule, the Marzoccos' response to the summary judgment motion would have been due within fourteen days after the motion was served. Loc. R. 2.03(II)(B) of the Court of Common Pleas of Montgomery County, General Division. As we noted, the Marzoccos did not respond to the motion in a timely fashion. On June 8, Joyce Marzocco filed a "memorandum" indicating that Ralph had a heart attack on May 2, 1999. In the memorandum, Mrs. Marzocco stated that heart by-pass surgery was scheduled for June 23, 1999, and that the immediate healing process was expected to take two months. Mrs. Marzocco did not ask for a continuance. Instead, she said the Marzoccos would continue to "work" the pending cases as expeditiously as possible. No response to the summary judgment motion was filed thereafter, despite the requirements of the local rules. Id.
Subsequently, on July 15, 1999, Ralph Marzocco filed a motion, asking for a continuance (or moratorium from responding to pleadings) from June 23, 1999 to August 4, 1999, due to his heart surgery. Judge Frost rejected the request on June 20, 1999. In the entry, the judge said that Ralph's motion would not be considered without a doctor's certificate. Further, Judge Frost noted that the motion for continuance would not affect Joyce Marzocco. As we said, Mrs. Marzocco had not, in fact, even asked for a continuance.
Ralph then filed a doctor's affidavit (of a Dr. Hymon) on August 2, 1999. Essentially, Dr. Hymon said in the affidavit that surgery was performed on June 23, 1999, and that he told Ralph not to return to work until six weeks after the day of surgery. Counting from the date of surgery, the return date would have been August 4, 1999, which also was the outer limit of the extension requested in Ralph's motion for continuance.
Judge Frost did not thereafter further rule on Ralph's motion. However, even after August 4, 1999, neither Ralph nor Joyce ever filed any response to the motion for summary judgment. No further requests for continuances were submitted. Accordingly, Judge Frost granted summary judgment in favor of NBD Mortgage on August 10, 1999.
Normally, when a trial court fails to rule on a motion, we presume the motion was denied. Pentaflex v. Express Services, Inc. (1998),130 Ohio App.3d 209, 217. That presumption would not necessarily attach here, since even if Judge Frost had granted the motion, the time limit would have expired on August 4, 1999. Therefore, the Marzoccos would still have had to file a response by that date — or ask for a further continuance. They did neither.
Since the Marzoccos did not respond by August 4, 1999, or indeed at any time thereafter, and never asked for a further continuance, the trial court was certainly justified in ruling on the pending summary judgment motion. At that time, the motion had been pending for more than three months, with no response from the Marzoccos. Moreover, in dealing with the pending motions, Judge Frost was obviously acting within his jurisdiction. Consequently, the second assignment of error is without merit and is overruled.
C. Deprivation of a Senior Lienor's interest
In the third assignment of error, the Marzoccos contend that the trial court erred by finding that a junior lienor, holding a one-half interest, can deprive senior lienors, holding entire interests in real estate, of one-half of their interest. This assignment of error relates to a motion the Marzoccos filed on August 10, 1999, in Case No. 99-552. In the motion, the Marzoccos asked Judge Frost to dismiss a praecipe filed by Richard Knostman for the judicial sale of the Clifty Falls property. The praecipe in question, however, was actually filed in an action over which another judge presided, i.e., Case No. 95-820, which was assigned to Judge Sunderland of the Montgomery County Common Pleas Court.
In the motion to dismiss the praecipe, the Marzoccos argued that the sale of Ralph Marzocco's half interest in the property would deprive NBD Mortgage of the superiority of its lien, which was the first and best lien on the premises. On appeal, the Marzoccos additionally claim that the sale of the half interest would deprive Fifth Third Bank of its proper position in lien priority.
As we mentioned earlier, Fifth Third was the assignee of debt owed by the Marzoccos to NBD Bank. NBD Bank is not to be confused with NBD Mortgage, which recorded a lien on the Clifty Falls property in 1991. NBD Bank's mortgage was recorded in 1994, prior to the date when Ellen Bolling's certificate of judgment against Ralph Marzocco was recorded. However, in 1996, when Fifth Third purchased the assets of NBD Bank, Fifth Third released the lien on the Clifty Falls property and failed to record its own mortgage. As we said, this issue was the subject of a third-party complaint that the Marzoccos filed against Fifth Third and others in Case No. 97-5310 (the partition action). The Marzoccos had also previously raised this point in the action to foreclose Ralph Marzocco's half interest (Case No. 95-820).
Judge Frost rejected the motion to dismiss the praecipe, stating that no matter who holds the best and first lien, any lienholder may subject real estate to a judicial sale. The Marzoccos claim this decision was erroneous.
To the extent this issue is arguably relevant to anything in Case No. 99-552, it appears to relate to the confirmation order and amended confirmation order, which set out the priority of persons entitled to funds from the October, 2000 sale of the Clifty Falls property. Since we have said that the confirmation orders are not final, appealable orders, we lack jurisdiction over the issue. Nonetheless, we feel compelled to add that Judge Frost could not have granted the Marzoccos' motion to dismiss the praecipe for sale, even if he felt the motion had merit. The reason is that the praecipe was issued in a case pending before a different judge.
Under the Rules of Superintendence for the Courts of Ohio, the judge assigned to a case:
 becomes primarily responsible for the determination of every issue and proceeding in the case until its termination. All preliminary matters, including requests for continuances, shall be submitted for disposition to the judge to whom the case has been assigned or, if the assigned judge is unavailable, to the administrative judge.
Sup. R. 36(B)(1). See also, e.g., Berger v. Berger (1981),3 Ohio App.3d 125, 128 (holding under former rule of superintendence that assigned judge is responsible for all substantive action on a case). Consequently, the only individual able to rule on substantive matters in a case is the assigned judge, unless the judge is unavailable. In that event, matters may be submitted to the administrative judge for the court.
Judge Frost was a visiting judge and was clearly not the administrative judge for the Montgomery County Common Pleas Court. As a result, Judge Frost would not have had authority, under any circumstances, to dismiss a praecipe filed in an action pending before another judge of the court.
In view of the preceding discussion, we decline to rule on the third assignment of error. If we were able to consider it, we would find it completely without merit.
D. NBD Mortgage's Motion for Summary Judgment
The fourth assignment of error concerns the trial court's decision to grant summary judgment to NBD Mortgage on its foreclosure complaint. According to the Marzoccos, this was error because genuine issues of material fact existed. The alleged issues of fact are that: 1) the lienors were not prioritized according to law; 2) the foreclosure entry improperly awarded attorney fees; 3) NBD Mortgage no longer holds an "entire interest" in the real estate, but holds an undivided one-half interest, as does Richard Knostman (the purchaser of Ralph Marzocco's one-half interest); and 4) Ralph Marzocco was denied a chance to submit a responsive pleading to the summary judgment motion.
As we mentioned earlier, the amended confirmation order, from which Ralph Marzocco appealed, is not a final, appealable order. We also note that the proper appeal of the summary judgment and foreclosure order is from the foreclosure order itself. Speakman (1985), 18 Ohio St.3d 119. Specifically, both the foreclosure order and the confirmation order are final orders, from which appeal must be taken. Id.
The Marzoccos timely appealed the foreclosure order. However, we rejected their appeal because the trial court initially did not include a Civ. R. 54(B) certification, and then later refused to include the certification. See NBD Mortgage Co. v. Marzocco (May 17, 2000), Montgomery App. No. 18001, unreported. A Civ. R. 54(B) certification has never been filed for the foreclosure order, at least up to the point that the record before us ends. Accordingly, the propriety of summary judgment and the foreclosure order are still not properly before us.
We do note that the issues raised by the Marzoccos do not contest the substance of the summary judgment motion, i.e., the debt owed to NBD Mortgage. Instead, the Marzoccos focus on collateral matters that are irrelevant or incorrect, or that may be barred by lack of standing andres judicata/collateral estoppel. However, we cannot rule on these matters, because the foreclosure is not properly before us.
Based on the preceding discussion, we decline to consider the fourth assignment of error.
E. The Allegedly "Fallacious" Nature of the Trial Court Proceedings
In the fifth assignment of error, the Marzoccos criticize the trial court proceedings and claim that various acts of Judge Frost were prejudicial. One act in particular, i.e., Judge Frost's decision to vacate a default judgment against Karen Titus, is alleged to have been "egregious" judicial misconduct.
A decision to vacate a default judgment may be a final, appealable order, but not if it is entered against less than all parties and the trial court does not make an express determination that there is no just reason for delay. Lee v. Joseph Horne Co., Inc. (1995), 99 Ohio App.3d 319,322-23, citing Jarrett v. Dayton Osteopathic Hosp., Inc. (1985),20 Ohio St.3d 77. See also, GTE Automatic Elec., Inc. v. ARC Industries,Inc. (1976), 47 Ohio St.2d 146, paragraph one of the syllabus. In this case, Judge Frost's decision setting aside the default judgment was filed on September 26, 2000. The decision does not contain a Civ. R. 54(B) certification and is not a final, appealable order. Moreover, the Marzoccos did not file an appeal from the entry. Consequently, the default judgment is not even arguably before us.
On the other hand, to the extent that the fifth assignment of error raises claims about Judge Frost's alleged misconduct, it does relate to the dismissal of the third-party complaint, which was a final, appealable order. Therefore, we have considered, but reject the remaining points in the fifth assignment of error. As we previously said, Judge Frost is immune from suit.
Furthermore, the proper avenue for challenging a judge's alleged bias is to file an affidavit of disqualification with the Ohio Supreme Court. R.C. 2701.03(A). Similarly, failure to enter judgment or unnecessarily delays in proceeding may be remedied by application for writ of mandamus or procedendo. State ex rel. Dehler v. Sutula (1995), 74 Ohio St.3d 33,35.
Accordingly, the fifth assignment of error is without merit and is overruled.
F. Alleged Fraudulent Conveyance "Scheme"
The sixth assignment of error is based on the Marzoccos' claim that NBD Mortgage, Knostman, Titus, and others, entered into a fraudulent conveyance scheme to force the Marzoccos to pay a disputed claim of Titus. Although the discussion in this assignment of error, as well as the entire Marzocco brief, is often rambling and incoherent, the argument appears to be as follows. To force the Marzoccos to pay a disputed claim, Knostman, Titus, and others, including the attorney who represented NBD Mortgage, concocted a scheme to sell the "entire interest" in the Clifty Falls property at auction. (This would be the October 27, 2000 sale of the entire property, in Case No. 99-552). The conspiring parties expected the Marzoccos to bid and be the successful purchasers at the auction. Because the money realized as a result of the sale would be paid to NBD, Titus, and others, the Marzoccos would effectively be forced to pay the "disputed claim."
The Marzoccos did not attend the sale and Knostman was left to purchase the property for $78,000. However, as the owner of an unencumbered one-half interest in the property, Knostman received $39,000 from the sale. The Marzoccos, therefore, contend that Knostman somehow violated statutory law (of an unspecified nature) by paying only $39,000 for an "entire interest" in the real estate.
NBD Mortgage points out in its brief that these arguments are nonsensical. Specifically, Knostman paid $30,000 for Ralph Marzocco's half interest in the Clifty Falls property in Case No. 95-820, pursuant to the sheriff's sale on October 9, 1999. Of that amount, NBD Mortgage received $26,684 as partial payment for the amount the Marzoccos owed on their loan. However, because the loan amount exceeded the amount recovered, the court held in Case No. 95-820 that the Marzoccos still owed NBD Mortgage $15,452.38. As we mentioned, the Marzoccos did not appeal from that judgment.
When the property was again sold at auction in Case No. 99-552, Knostman paid an additional $78,000 for the property. Without any kind of deduction, Knostman would have paid a total of $117,000 in the course of the two sales. However, the appraised value of the property was less than that, or around $99,000. Since Knostman was already half-owner of the property, $39,000 (or one-half of the sale price in Case No. 99-552) was distributed to him via the confirmation entry in Case No. 99-552. Therefore, following the second sale and confirmation entry, Knostman was the full owner and had paid a total of about $72,000 for the property. NBD Mortgage received an additional $19,947.65 from the second sale to satisfy its lien, and $16,029.27 was left to distribute to the beneficiaries of a trust Ralph and Joyce Marzocco had created for the property.
There is nothing mysterious or confusing about this set of events. The only confusion that has been introduced stems from the Marzoccos' attempts to hinder and obstruct the foreclosure proceedings. In fact, our review of the record reveals that the "disputed claim" is nothing more than the money Ralph Marzocco agreed to pay the Ellen Bolling Trust in 1993 to settle the lawsuit the trust brought against him for mismanagement. Bolling's guardian and trustee, Karen Titus, has merely been trying for seven years to collect an admitted debt that Ralph Marzocco owes.
Unfortunately, because the amended confirmation entry was not a final appealable order, we lack jurisdiction over the sixth assignment of error and cannot issue a ruling on this point.
G. Third-Party Complaints against Burnham, Cumming, and Krebs
In their brief, the Marzoccos did not separately set forth and argue any error directed to dismissal of the supplemental third-party complaints against Ralph Burnham, John Cumming, and Leo Krebs. These individuals were attorneys representing various parties in Cases No. 97-5310 and No. 99-552. The Marzoccos contend in their reply brief that the failure to assert error was due to our constraints on brief length. They also blame our entry granting expedition, which noted that time extensions would not be permitted except upon a showing of extraordinary circumstances.
Under App. R. 16(A)(3), parties are required to state the assignments of error presented for review, and to refer to the place in the record where each error is reflected. If a party fails to separately set forth assignments of error, we need not consider the error. See App. R. 12(A), and Akron v. Wendell (1990), 70 Ohio App.3d 35, 45-46.
The fact that page lengths are imposed on briefs is not an excuse for failing to assign errors. Under Loc. R. 2.2 of the Second Appellate District, litigants may ask for leave to file briefs which exceed the 25 page limit. However, no such request was made in this case. Ironically, the Marzoccos' brief did, in fact, exceed the page limit by four pages, and was filed without such a request for leave.
As an additional point, the language concerning continuances is simply the standard language we use when we expedite cases. While continuances in expedited cases are discouraged, they are not prohibited. More to the point, however, the Marzoccos made no attempt to ask for a continuance.
Given the Marzoccos' failure to assign specific error to the dismissal of the supplemental third-party complaints, the judgments dismissing these complaints against Burnham, Cumming, and Krebs will be affirmed.
In light of the preceding discussion, the assignments of error are resolved as follows:
 1) the first, second, and fifth assignments of error are without merit and are overruled;
 2) the third, fourth, and sixth assignment of errors will not be considered, due to the lack of a final, appealable order.
Accordingly, the trial court judgments dismissing the third-party complaints against Judges Petzold and Frost and dismissing the supplemental third-party complaints against Ralph Burnham, John Cumming, and Leo Krebs are affirmed. Appeals of the following orders are dismissed for lack of a final, appealable order:
 1) the entry denying the Marzoccos' January 29, 2001 "motion" and February 1, 2001 "amended motion" to charge NBD Mortgage with perpetrating a fraud on the court;
 2) the entry granting a motion to compel discovery filed by Third-Party Defendant, Karen Titus, against the Marzoccos;
 3) the entry granting the motion to dismiss the supplemental third-party complaint filed against Gregory Dunsky and C. Robert Swaninger; and
4) the March 21, 2001 amended confirmation entry.
Also pending is a motion for reconsideration filed by the Marzoccos on August 8, 2001. The motion asks that we reconsider our August 2, 2001 decision, which overruled the Marzoccos' request for an order requiring the trial court to "cease and desist" from adjudicating any matters during the pendency of this appeal. In the decision, we noted that the trial and appellate courts had concurrent jurisdiction. The Marzoccos claim we were mistaken, because appeals deprive the trial court of jurisdiction.
In this regard, the Ohio Supreme Court has said that:
 [w]hen a case has been appealed, the trial court retains all jurisdiction not inconsistent with the reviewing court's jurisdiction to reverse, modify, or affirm the judgment.
Howard v. Catholic Social Serv. of Cuyahoga Cty., Inc. (1994),70 Ohio St.3d 141, 146. As we mentioned earlier, the orders being appealed were entries dismissing third-party complaints, an entry ruling on a discovery issue, and an amended confirmation entry. Under Howard, the trial court retained jurisdiction to proceed in any way it saw fit regarding the remaining issues in the case. This would particularly be true for Civ. R. 54(B) appeals, which contemplate ongoing trial court proceedings during the appeal.
Furthermore, since the amended confirmation order was not a final, appealable order and the foreclosure order was never certified for purposes of immediate appeal, our jurisdiction on appeal was really quite limited. Accordingly, the motion for reconsideration of our August 2, 2001 decision is denied.
IT IS SO ORDERED.
FAIN, J., and YOUNG, J., concur.