## McDermott v. Continental Ins. Co.
*[Cite as 7 AOA 85]*

*Case No. 13-88-24*
*Seneca County, (3rd)*
*Decided September 20, 1990*

Dennis M. Fitzgerald, Oxley, Malone, Fitzgerald & Hollister, 301 East Main Cross Street, P.O. Box 1086, Findlay, Ohio 45840, for Appellant, Continental Insurance Company.

Thomas R. Furey and Joseph D'Arcangelo, Kroncke, D'Arcangelo, Sutter & Furey, 2255 West Laskey Road, Toledo, Ohio 43613, for Appellant, Kinn-Lerch-Theobald Agency, Inc.

Konrad Kuczak, Attorney At Law, P.O. Box 963, Mid City Station, Dayton, Ohio 45402, for Appellee, LaVanga McDermott, Executrix.

BRYANT, J.

This is an appeal by the defendants-appellants, Kinn-Lerch-Theobald Agency, Inc. (hereinafter KLT) and Continental Insurance Co. (hereinafter Continental) from a judgment of the Court of Common Pleas of Seneca County entered on July 5, 1988 finding them jointly and severally liable to and entering a money judgment in favor of plaintiff-appellee, LaVanga McDermott, Executrix of the Estate of James McDermott (hereinafter McDermott).

As a sole proprietor, McDermott operated a trucking business insuring his vehicles with Continental through the agency of KLT. The policy term in question commenced December 16, 1984 and ended December 16, 1985. Premium payments were to be made in three installments of $3,711, $2,783, and $2,783, respectively. The policy coverage when originally issued was not in accord with the wishes of the insured and was subsequently corrected to satisfy McDermott by KLT agent, Tom Herman, on January 11, 1985. McDermott was very active in overseeing his insurance policies and made frequent changes in his coverage.

On February 22, 1985, McDermott allegedly requested of Tom Herman deletion of collision coverage on his Tri-Brooke trailer, vehicle number six under the policy endorsements. The record contains testimony that Herman, in response to McDermott's wish, wrote a memorandum of the deletion and sent it for implementation to Continental which received it on February 27, 1985. Continental's employee in her testimony at trial stated that it generally takes thirty to sixty days to process deletions and send them back to the agent.

On March 7, 1985, McDermott allegedly instructed Herman to delete all coverage on vehicle number six except comprehensive coverage. On March 17, 1985, McDermott received a bill for $2,783 as the second premium installment due on the original policy. The statement did not reflect any deletions from the original coverage and McDermott did not pay it. The next day, March 18, 1985, McDermott allegedly told Herman to delete comprehensive coverage on and cover vehicle number six for liability only.

Subsequently, all these changes were processed on March 28, 1985 along with a computer coding slip specifying the deletions made from the policy and the refund made to McDermott's account. The coding slip did not specifically reflect the deletion of coverage as to vehicle number six, but it did show the correct amount of premium overpayment to be credited for the deletion of collision coverage effective

February 22, 1985. This coding information as well as the revised bill was received by KLT on April 17, 1985. The revised bill reflecting the coverage deletions was received by McDermott on May 14, 1985 and he subsequently paid it as rendered.

On April 19, 1985, vehicle number six overturned sustaining $13,870.50 in damages. When notified of the loss, Herman initially assured McDermott that the loss was covered but later informed him that both comprehensive and collision coverage were deleted on vehicle number six, pursuant to his directions. McDermott disagreed that the deletions pertained to vehicle number six and requested payment under the collision provision of the original policy agreement which both KLT and Continental refused. There was an effort by appellants to make an *ex gratia* payment to McDermott for eighty percent of the loss but the testimony in the record conflicts about whether the offer was withdrawn after the death of McDermott or rejected by his executrix.

Disputing KLT's allegation of the deletion of collision coverage as well as the authority of KLT's agent to issue a binder effective February 22, 1985 before the insured received express written approval of change of coverage from Continental, McDermott's executrix brought suit to recover the loss for damage to vehicle number six and for punitive damages and her attorney fees.

The trial court found that McDermott's vehicle number six was insured for collision and comprehensive coverage under the policy and awarded plaintiff $13,870.50 for the loss, minus the applicable deductible of $500 for a total of $13,370.50 plus 10 percent interest from the date of the accident. In addition, the court found conscious wrong-doing and breach of known duty by KLT and Continental, and awarded McDermott $5,000 in punitive damages, and $4,456.83 in attorney fees.

KLT and Continental now appeal from the judgment entered upon the trial court's findings.

Since both Continental & KLT have presented essentially the same first assignments of error, we consider them together for brevity.

Continental's first assignment of error is:

"I. The trial court, as the trier of fact, erred in finding that collision coverage existed on the Appellee's Tri-Brooke Trailer on April 19, 1985 inasmuch as the documentary evidence in this case unequivocally indicates that Appellee

requested that such coverage be deleted and that such coverage was, in fact, deleted effective February 22, 1985."

KLT's first assignment of error is:

"I. The court erred in finding that the Tri-Brooke Trailer was insured for the loss which it sustained on April 9, 1985."

The appellants' basic contention is that judgment was entered upon findings made against the manifest weight of the evidence. We have reviewed the complete record with proper deference to the trial court and find appellants' first assignment of error well taken.

In its findings of fact, the trial court found that KLT agent Herman informed McDermott that the April 19, 1985 loss was covered; that McDermott was a prudent operator of his equipment and that he pledged vehicle number six as collateral for a $30,000 loan on January 16, 1985; that vehicle number six was in continuous operation; and, concluded that if McDermott did request deletion of coverage to vehicle number six, such only constituted an offer to change coverage because a clause of the Continental policy states that only Continental can issue endorsements to that policy.

In examining the record, we are convinced that these findings do not lead to the legal conclusions made by the trial court. First, when an agent informs the insured that a loss is covered, but the policy in fact excludes coverage, the agent's assurance does not obligate the insurer to extend coverage. *Hartory v. State Auto. Mut. Ins. Co.* (1988), 50 Ohio App. 3d 1. When KLT agent Herman initially stated his belief that the collision or upset loss was covered, that statement did not automatically extend coverage to McDermott beyond the actual terms of his policy. The record shows that Herman, after he checked his records, immediately informed McDermott that comprehensive and collision coverage had been deleted.

The trial court's findings that McDermott was a prudent operator is not probative of either the requirements of prudence or of McDermott's conduct concerning his insurance coverage in this specific instance. The fact that the vehicle was in continuous operation and pledged as collateral does not tend to prove either McDermott's purposes for choosing insurance coverage or more specifically the existence of collision and/or comprehensive insurance coverage at the time of McDermott's loss. It should be noted that the lender bank was not a named loss payee of McDermott's policy at the

time of the loss and a finding of McDermott's admitted business acumen alone permits no further inference that he intended and acted upon his intention to protect his creditor from loss by obtaining collision and/or comprehensive insurance coverage of the loan security.

The trial court's conclusion that McDermott's instructions for deletion of coverage were only *offers to change coverage* is not in accord with settled law. If followed to its logical extreme, the trial court's conclusion would preclude an insured's covering his vehicle with insurance in a manner consistent with his ability to immediately use such vehicle or with his individual financial considerations. Also, it is well developed in the law of agency that a general agent such as KLT has actual authority to bind its principal when acting within the scope of its agency. When an insured tells a general agent to delete unwanted coverage under an existing policy the insured has every right to expect it to be deleted immediately without incurring further cost for delay.

An insurance policy is a voluntary contract entered into by mutual consent of the parties. An oral deletion of coverage is only an oral alteration of the written contract and is legally permissable if mutually consented to and not contrary to statute or public policy.

In *Horowitz v. United States Fire Insurance Co.* (1962), 23 O.O. 2d 172, 173, the court stated:

"This conduct of the parties was an alteration in the policy coverage consented to by the parties. This sort of oral modification or oral alteration, even in the light of the provision respecting change in the contract, is lawful and proper. In 6 Couch Cyclopedia of Insurance Law, Sec. 1384, at p. 4972, et seq., the author citing many authorities, says:

"'Since an insurance policy is but the written expression of the contract, the parties thereto may make such lawful alterations and modifications thereof as they may mutually agree upon. Such alterations or modifications may be made by endorsements on the policy, either marginal, or on its back, or by inserting words in the body of the instrument, or by a separate paper, or new policy embodying the change, *or orally,* and this by direct act of the company itself, *or of its authorized agent,* or by way of ratification by the principal of a change made by or with the consent of its agent.***. '" (emphasis added).

Although *Horowitz* and the quotation adopted therein are dated, we believe them, nevertheless, to state accurately the current law applicable to the case at bar.

R.C. 3937.13(B)(1) provides in part that the Revised Code does not prohibit changes in coverage or policy limits, cancellations, or renewal for any reason at the request or with the consent of the insured.

The insurance policy issued to McDermott permits the insured to cancel coverage by simply notifying the agent of the insurer.

In our view, neither statute nor contract here prohibits acceptance by the insurer of an oral request of its insured to alter or change in part the insurance coverage to be afforded the insured, or that such change may be bound and effective upon consent of the insurer to the change requested to be made, although the processes of creating a written memorial to the effect may be delayed.

Appellate decisions by courts of Florida and Michigan are in accord with our holding. See *Allstate Ins. Co. v. Doody* (Fla. Dist. Ct. App. 1967), 193 So. 2d 687 and *Blekenk v. Allstate Ins. Co.* (1986), 152 Mich. App. 65, 393 N.W. 2d 883.

We, therefore, hold that the trial court was incorrect in its conclusion that the insured must have received written endorsement of changed application of coverage in order for the changes requested by the insured to be in effect.

Militating against a finding of coverage, the record reveals documentary as well as testimonial evidence that prior to the loss, KLT and Continental generated three successive memoranda concerning deletion of coverage for endorsed vehicle number six. On February 22, 1985, KLT agent Herman recorded the deletion of collision coverage specified by McDermott. On March 7, 1985, a Continental underwriter recorded her memorandum deleting all coverage except comprehensive on vehicle number six in response to Herman's advice concerning McDermott's purported instructions Again, on March 18, 1985 Continental recorded a memorandum deleting all coverage except liability coverage on vehicle number six, again, purportedly in response to McDermott's directions to Herman by telephone the previous day. This evidence, worthy of belief, shows effective deletion of aspects of coverage, including collision, on three occasions prior to the loss on April 19, 1985. As seen, there is no probative countervailing evidence. In passing, we note

that an insurer is not likely to generate memoranda altering coverage of an existing policy and reducing premiums to be received unless to conform to the wishes or orders of the insured.

Further, the record reveals that McDermott was credited with a refund of premium upon deletion of collision coverage in the sum of $595 computed from the effective date of February 22, 1985. Though the revised bill was received by McDermott after the loss on April 19, 1985 the original bill without deletions of coverage was not paid by McDermott even though received by him more than a month prior to the loss. In addition, the documentary evidence shows that the February and March deletions were processed on March 28, 1985 and were received by KLT on April 17, 1985 - two days prior to McDermott's loss. Finally, it is worth noting that KLT's Herman and Continental's Nobluach testified about their firsthand knowledge of their participation in these events, whereas, plaintiff's evidence respecting McDermott's instructions to Herman, in its entirety, consists of the testimony of McDermott's widow in which she related her recollection of having overheard a telephone conversation between her husband and Herman which she reported as Herman's agreement to full coverage on vehicle number six. Upon objection, her testimony in this regard, with the exception of the fact of Herman's reported statement, was not received in evidence, and, therefore, presumably was not considered by the court in its role as trier of fact.

The standard of review for manifest weight of the evidence is clear in Ohio. "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris v. Foley Construction Co.* (1978), 54 Ohio St. 2d 279, 280.

In applying this standard to the case at bar, it has been our duty to diligently search the record in order to find the competent, credible evidence supporting the judgment. After thorough examination we do not find such evidence. Therefore, both Continental's first assignment of error and KLT's first assignment of error are well taken.

Continental's second and third assignments of error are:

"II. The trial court, as the trier of fact, erred in concluding that the evidence in this case supported the claim that Continental breached its duty to act in good faith in the processing and payment of the claims of Appellee.

"III. The trial court, erred in awarding $5,000 in punitive damages inasmuch as the record in this case shows a glaring absence of any set of facts to support a finding that Appellant-Continental acted with actual malice, fraud or insult with respect to resolution of Appellee's claim herein."

KLT's second and third assignments of error are:

"II. It was error for the court to render judgment against the defendant, KLT on breach of contract and bad faith claims as these claims were not asserted against KLT in the complaint.

"III. It was contrary to law for the court to render judgment against KLT on the breach of contract and bad faith claim."

Continental and KLT, basically, contend the trial court erred by finding that they breached known duties and acted in bad faith justifying an award of punitive damages.

It is settled law in Ohio that punitive damages can be awarded to an insured when an insurer breaches its duty to act in good faith in the settling or payment of a claim. *Hoskin v. Aetna Life Ins. Co.* (1983), 6 Ohio St. 3d 272. Failure to act in good faith is equivalent to bad faith and connotes more than bad judgment or negligence.

"It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another." *Hoskin*, at 276.

Our earlier analysis of unrebutted evidence reveals that collision and/or comprehensive coverage on vehicle number six was effectively deleted from the policy upon instructions by McDermott prior to the April 19, 1985 loss. Therefore, Continental and KLT had no duty to settle that specific claim. Further, there is evidence that Continental offered to make a substantial *ex gratia* payment to McDermott at the behest of KLT, as a good will gesture to its good customer. Appellee's apparent misunderstanding of such efforts does not connote appellant's bad faith.

Therefore, Continental's second and third assignments of error and KLT's second and third assignments of error are also well taken.

Continental's fourth assignment of error is:

"IV. The trial court erred to the prejudice of Continental in finding an award of attorney fees was warranted where the record is devoid of evidence that Continental acted vexatiously wantonly, obdurately or for oppressive reasons."

"Generally, a prevailing party may not recover attorney fees as costs of litigation in the absence of statutory authority unless the breaching party has acted in bad faith, vexatiously, wantonly, obdurately or for oppressive reasons." *Gahanna v. Eastgate Properties, Inc.* (1988), 36 Ohio St. 3d 65, 66. We find none of these elements to be demonstrated by or inferable from any evidence in the record before us.

Therefore, Continental's fourth assignment of error is well taken.

Continental's fifth and last assignment of error is:

"V. Should any of the Appellant-Continental's assignments of error be found to be without merit, it is asserted, in the alternative that the trial court erred to the prejudice of Defendant-Appellant in failing to make separate findings of fact and conclusions of law as requested."

Pursuant to Civil R. 52 counsel may request separate findings of fact and conclusions of law when the trial court is trier of fact. This request was made and both counsel submitted post-trial briefs on the matter. Apparently, the trial court adopted appellee's proposed findings as the findings and conclusions of the court. This is consistent with the rules and with trial procedure. We find Continental's fifth assignment of error to be unsupported by the record.

Continental's fifth assignment of error is not well taken and is overruled.

Accordingly for error prejudicial to appellants as demonstrated in the record by the assignments and arguments of appellant, the judgment of the Common Pleas Court of Seneca County is reversed and remanded to that court with instructions to enter judgment for defendants dismissing the action at plaintiff's costs.

*Judgment reversed and remanded.*

SHAW, P.J., and MILLER, J., concur.