LEADER NATIONAL INSURANCE COMPANY, Appellee,

v.

EATON et al., Appellants.

[Cite as *Leader Natl. Ins. Co. v. Eaton* (1997), 119 Ohio App.3d 688.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

Nos. 70332 and 70364.

Decided May 5, 1997.

*Roetzel & Andress, Ronald B. Lee* and *Laura M. Faust,* for appellee.

*Jacobs, Rubin & Bensing* and *Thomas L. Jacobs, Chattman, Gaines & Stern, John V. Scharon* and *Sara J. Moore, Diamond, Dubsky & Ford* and *Peter Liviola,* for appellants.

KARPINSKI, Judge.

These consolidated appeals arise from a dispute concerning whether a vehicle is covered by a commercial vehicle liability insurance policy. The policy schedule specifically listed one vehicle, a 1984 Ford truck, but not the second vehicle, a 1982 Chevrolet truck, involved in an accident. The dispute concerns whether the second vehicle, which was being used while the first vehicle was in a service garage for repairs, is covered by an automatic insurance provision in the policy.

Plaintiff-appellee Leader National Insurance Company ("Leader") commenced this declaratory judgment action against defendants-appellants Henry Eaton, the

owner of the trucks, his scrap proprietorship, Four Wheel Auto Wrecking (collectively, "Four Wheel"), and the person injured by the operation of the truck, David Rogowski. Leader's complaint sought a declaratory judgment that it was not liable under the commercial vehicle policy issued to Four Wheel for the damages arising out of this incident.

Defendants filed answers denying the allegations in Leader's complaint. Four Wheel raised a counterclaim against Leader seeking coverage under the policy. The parties thereafter filed cross-motions for summary judgment and briefs in opposition to their opponents' motions for summary judgment.

The record shows that Four Wheel obtained a commercial vehicle insurance policy from Leader for a period of one year commencing October 7, 1992. The sole vehicle listed in the policy declarations and used by Eaton in the Four Wheel auto scrap yard business was the 1984 Ford truck. On August 23, 1993, Eaton purchased an inoperable 1982 Chevrolet truck. Shortly thereafter, on October 7, 1993, Four Wheel renewed the commercial vehicle insurance policy and again designated the 1984 Ford truck, its sole operable vehicle, for another year. Four Wheel did not seek coverage for the inoperable 1982 Chevrolet truck or notify Leader that it owned the 1982 Chevrolet truck.

Approximately three months later on January 17, 1994, Four Wheel took the inoperable 1982 Chevrolet truck in for repairs. On January 20, 1994, while the 1982 Chevrolet truck was in the repair shop, Four Wheel also took the 1984 Ford truck out of service to a service garage for repairs. Four Wheel had no vehicles for several days. The 1982 Chevrolet truck was repaired on January 22, 1994, before repairs were completed on the 1984 Ford truck. Four Wheel registered the 1982 Chevrolet truck with the Bureau of Motor Vehicles, obtained temporary thirty-day license plates, and began using the 1982 Chevrolet truck the same day.

On February 1, 1994, while Four Wheel was using the 1982 Chevrolet truck and before the 1984 Ford truck was returned to service, a wheel came loose from the axle of the 1982 Chevrolet truck and struck a vehicle driven by Rogowski. Rogowski's minivan was completely destroyed, and he suffered bodily injuries. The following day, Eaton reported the incident to D.M. Dixon & Associates, an insurance agent for Leader. At the same time, Eaton also purchased commercial vehicle liability coverage by adding an endorsement for the 1982 Chevrolet truck to the existing commercial vehicle liability policy. The 1984 Ford truck was returned to service from the repair garage the following day, three days after the accident involving the 1982 Chevrolet truck.

Rogowski obtained payment for the property damage to his vehicle from Nationwide Insurance Company ("Nationwide"), the insurer of his own vehicle. Nationwide contacted Leader and sought reimbursement approximately six months after the accident, on September 19, 1994. Leader spoke directly with

Eaton the following day and issued a check, dated September 20, 1994, in the amount of $2,768.25 to Nationwide for the property damage claim. Prior to paying this claim, Leader did not reserve its right to deny coverage for the 1982 Chevrolet truck based on Eaton's failure to notify them within thirty days of the date when he acquired the 1982 Chevrolet truck in an inoperable condition. Approximately two weeks after paying this claim, on October 3, 1994, Leader stated for the first time in a certified letter to Four Wheel that its handling of the claim was subject to a reservation of rights.

When the trial court without opinion granted summary judgment to Leader on its complaint and the counterclaims, Four Wheel appealed in court of appeals case No. 70332.[1] The trial court thereafter "clarified" its judgment entry, pursuant to leave of this court, which was appealed in court of appeals case No. 70364. In its second ruling, the trial court held that the 1982 Chevrolet truck was not a covered auto and that Leader had not waived its rights to assert this defense. This court consolidated these two appeals for hearing and disposition.

Four Wheel raises the following two related assignments of error:

"The trial judge erred in granting the appellee's motion for summary judgment and in denying appellant's motion for summary judgment.

"The trial court erred in granting summary judgment in favor of the appellee-plaintiff as the order by the trial court is improper as a matter of law and violates public policy."

These assignments are well taken.

Four Wheel argues that the trial court improperly ruled on the parties' cross-motions for summary judgment. Four Wheel argues that the 1982 Chevrolet truck qualified as a covered vehicle under the commercial liability policy and that Leader waived any failure by Eaton to give timely notice of acquiring the inoperable truck by paying the property damage claim after the accident without expressing any reservation of rights.

There have been numerous cases involving automatic insurance clauses such as the one at issue in this case. These provisions generally grant insurance coverage upon the acquisition of nonscheduled vehicles and require subsequent notice to the insurer within thirty days.[2] Courts applying these provisions have reached conflicting opinions concerning when an inoperable vehicle is "acquired"

---

1. It is well established that trial courts fail to fulfill their function in declaratory judgment actions by granting summary judgment without expressly declaring the parties' rights and obligations. *Waldeck v. N. College Hill* (1985), 24 Ohio App.3d 189, 24 OBR 280, 493 N.E.2d 1375.

2. Leader's policy provision is set forth in the appendix.

for purposes of insurance coverage, whether the notice period commences on the date the vehicle is subsequently made operable, and whether the notice requirement is waived under the circumstances of a particular case. See Annotation, Construction and Application of "Automatic Insurance" or "Newly Acquired Vehicle" Clause ("Replacement," "Blanket," or "Fleet" Provision) Contained in Automobile Liability Policy (1985), 39 A.L.R.4th 229.

█ There is authority in Ohio and other jurisdictions that inoperable vehicles do not constitute motor vehicles within the meaning of automobile liability insurance policies because no insurable risk exists until such vehicles are operable. See *Santana v. Auto Owners Ins. Co.* (1993), 91 Ohio App.3d 490, 632 N.E.2d 1308, for a survey of the case law. We need not address any issue concerning when the 1982 Chevrolet truck qualified as a covered vehicle under the commercial liability policy in this case, however, because Leader waived any defense concerning the timeliness of notice following Eaton's acquisition of the vehicle, when Leader paid the property damage claim without first reserving its rights to assert this defense.

█ It is well established that the right to assert policy limitations may be lost by waiver or estoppel. The existence of waiver or estoppel depends on the facts and circumstances of each case. *Hounshell v. Am. States Ins. Co.* (1981), 67 Ohio St.2d 427, 21 O.O.3d 267, 424 N.E.2d 311; *Turner Liquidating Co. v. St. Paul Surplus Lines Ins. Co.* (1994), 93 Ohio App.3d 292, 638 N.E.2d 174. Waiver exists when an insurer, by acts or declarations, evidences a recognition of liability under the policy. *Hounshell v. Am. States Ins. Co., supra*, at syllabus. Payment of a claim of a person injured by an insured, with knowledge of a potential defense against coverage and without any reservation of·rights, waives the defense.

Through its insurance agent D.M. Dixon & Associates, Leader was notified of the accident involving the 1982 Chevrolet truck on February 2, 1994. The sole vehicle scheduled for coverage under the commercial vehicle liability policy issued by Leader to Four Wheel was the 1984 Ford truck. The 1982 Chevrolet truck was notably absent from the schedule, and Four Wheel requested separate coverage for the 1982 Chevrolet truck the day it reported the accident. Leader had notice of the potential noncoverage of the 1982 Chevrolet truck at this time.

Approximately eight months after the accident Leader paid for the property damage caused by the 1982 Chevrolet truck in this accident. Prior to paying the claim, Leader spoke directly to Eaton concerning coverage of the 1982 Chevrolet truck. An affidavit submitted by Leader indicates that Eaton stated that the 1982 Chevrolet truck had temporary thirty-day license plates at the time of the accident and that Eaton agreed to provide Leader with documents, at a later

date, concerning his purchase of the vehicle. Before Leader made an immediate payment of the claim, Leader did not conduct any further investigation regarding coverage of the 1982 Chevrolet truck under the policy, nor did Leader reserve its rights to dispute coverage following further investigation. The record shows that Leader did not even attempt to reserve its rights to dispute coverage for the claim until approximately three weeks after making this payment. Leader's belated reservation of rights was untimely and ineffective because one cannot reserve rights which have already been waived.

Leader contends that it did not waive its right to dispute coverage because it did not voluntarily relinquish a known right. Leader argues it did not know the true facts underlying coverage for the 1982 Chevrolet truck. However, the record shows that Leader was aware of the circumstances concerning this defense against coverage. Leader knew that the 1982 Chevrolet truck was not listed on the policy schedule and knew that a thirty-day notice provision applied to newly acquired vehicles. Leader nevertheless paid the claim without obtaining purchase documentation from Eaton or further investigation of any kind. These circumstances indicate sufficient knowledge to constitute waiver of this defense.

Even if Leader did not have complete knowledge as it contends, it accepted this precise risk by paying the claim before investigating and failing to reserve its rights to dispute the claim after investigating. Taken to its logical conclusion, Leader's argument to the contrary would mean that an insurance company could always pay a claim and then dispute it later. Under the circumstances, we do not agree. The desideratum of clear finality outweighs any minimal inconvenience that might attach to a company adding a reservation of rights clause when it does not intend a settlement to be final.

Accordingly, Four Wheel's two assignments of error are well taken.

The judgment is reversed, and the cause is remanded for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

JAMES D. SWEENEY, P.J., and PATRICIA ANN BLACKMON, J., concur.

Appendix

The policy defines "covered vehicle" as follows:

"Your covered vehicle means any vehicle described on the Declarations page and any owned vehicle you replace it with. Your covered vehicle also means any additional vehicle ownership of which you acquire during the policy period if we insure, under this insurance, all vehicles you own. However, the replacement or

addition is insured only if you notify us within 30 days of acquisition of ownership. Prior to notification, a replacement vehicle is subject to the same coverage as the vehicle it replaces. Collision or Comprehensive coverage does not apply to any additional vehicle unless specifically requested by you and a premium paid for it prior to a loss involving the additional vehicle.

"Your covered vehicle also means a substitute vehicle when any vehicle described on the Declarations page, or any replacement or addition, can not be used because it is being serviced or repaired, or it has been stolen or destroyed. Collision or Comprehensive coverage is not afforded to substitute vehicles. A vehicle owned by you does not qualify as a substitute vehicle."

The policy defines "vehicle" as follows:

"Motor vehicle or vehicle is a self-propelled land vehicle on wheels designed for use on public roads and not running on rails or tracks."