NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0767n.06
Filed: October 17, 2006

Case No. 05-3280

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| THE LUBRIZOL CORPORATION, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE NORTHERN |
| NATIONAL UNION FIRE INS. CO. OF | ) | DISTRICT OF OHIO |
| PITTSBURGH, PA., AM. INT'L GROUP, | ) | |
| INC., and AM. INT'L GROUP TECHNICAL | ) | |
| SERVICES, INC., | ) | |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |

BEFORE: BATCHELDER, GIBBONS and COOK, Circuit Judges.

ALICE M. BATCHELDER, Circuit Judge. The appellant, Lubrizol, challenges the

district court's grant of summary judgment in favor of the appellees, National Union Fire Insurance

Company of Pittsburgh, Pennsylvania, American International Group. Inc., and American

International Group Technical Services, Inc. (collectively "National Union"), on the issue of

appellees' liability to Lubrizol under a Commercial Umbrella Policy. Because we find that

Lubrizol's claim is not covered by the policy, we affirm.

Central to this case are two contracts: an equipment purchase contract between Lubrizol and

Valvoline, and an umbrella insurance policy purchased by Lubrizol from National Union. Pursuant

to the equipment purchase contract, Lubrizol purchased some of Valvoline's used equipment and

1

replaced it with new, which enabled Lubrizol to sell additional products to Valvoline but also required that some Lubrizol employees would work on Valvoline's premises. The contract included the following indemnification provision:

> Valvoline and Lubrizol shall indemnify, defend, and hold each other harmless from claims, demands, and causes of action asserted against each other by any person (including, without limitation, Valvoline's and Lubrizol's employees) for personal injury or death, or for loss of or damage to property that results from the indemnifying party's negligence or willful misconduct hereunder. Where personal injury, death, or loss of or damage to property is the result of the joint negligence or misconduct of Valvoline and Lubrizol, each party's duty of indemnification shall be in proportion to that party's allocable share of such joint negligence or misconduct.

Lubrizol contends that when the parties entered into the contract, they intended to indemnify one another for claims of their respective employees arising from injuries suffered during work performed under the agreement. It was Lubrizol's belief that its National Union umbrella insurance policy would cover any payment to Valvoline pursuant to this indemnity agreement.

The National Union Commercial Umbrella Policy provided that National Union would pay sums in excess of the policy's $5 million deductible that Lubrizol became "legally obligated to pay by reason of liability imposed by law or assumed by the Insured under an Insured Contract." The policy defined "Insured Contract" as a contract under which Lubrizol "assume[d] the tort liability of another party to pay for Bodily Injury . . . to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement." The policy also contained a section entitled "Conditions"; of the many conditions set out in that section, two are relevant here. First, under the heading "Duties Of The Insured In The Event Of An Occurrence, Claim Or Suit," the policy explicitly states that "[n]o Insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid,

2

without our consent." And second, under the heading "Legal Actions Against Us," the policy provides that:

> There will be no right of action against us under this insurance unless:
> 1. You have complied with all the terms of this policy; and
> 2. The amount you owe has been determined with our consent or by actual trial and final judgment.

On June 20, 2000, a Lubrizol employee, Lynn James, was seriously injured while working at Valvoline's Cincinnati, Ohio, facility pursuant to the agreement between Lubrizol and Valvoline. James filed a workers' compensation claim against Lubrizol. In addition, James, a Texas resident, filed suit in Texas, alleging that Valvoline's negligence contributed to his injury. In response, Valvoline called upon Lubrizol for defense and indemnity pursuant to the agreement. In March 2001, Lubrizol notified National Union of the suit but did not request defense or indemnity. Lubrizol instead described the case as an employer's liability claim that would be defended by another insurer, ACE-USA.

Michael Cortese, an employee of National Union affiliate AIGTS, was assigned to monitor the case. Cortese made contact with Lubrizol in August 2001, and in September, Suzanne Day, a Lubrizol employee, confirmed by letter to Cortese that Valvoline had asserted a claim for indemnity. On November 5, 2001, Day wrote to Cortese, advising him that Lubrizol had made a settlement offer to Lynn James, which James's counsel had rejected. The letter continued:

> "Since Valvoline's claim against Lubrizol is a covered claim under the Umbrella Liability Policy . . . written by National Union [], we would like your immediate input on possible settlement of this matter. . . . Lubrizol intends to assume the defense of this matter from Valvoline pursuant to [the agreement]. . . . Please confirm that the continued retention of [] counsel is acceptable to National Union."

In December 2001, Day and Cortese had a telephone conversation in which, according to Day,

3

Cortese denied that National Union had a duty to defend in the matter, but left Day with the "impression that [Cortese] believed [the claim] was covered." On January 28, 2002, after consulting with outside counsel, Cortese told Day that the policy covered Valvoline's claim against Lubrizol.

When Cortese's supervisor, David Crowe, discovered in late February 2002 that Cortese had approved the claim, Crowe informed Cortese that the claim was not covered. However, instead of notifying Lubrizol immediately, Crowe instructed Cortese to attend a mediation conference in the James lawsuit, which was scheduled for the end of February 2002, to attempt to assist Lubrizol in obtaining a structured settlement. Cortese flew to Houston, Texas, to attend the mediation. Cortese had dinner with Lubrizol's attorneys on the night before the mediation, but did not reveal to them that National Union would not cover the claim. Instead, Cortese predicted that the suit would settle for less than Lubrizol's $5 million deductible. Cortese also stated that if the suit did not settle, National Union would retain counsel to monitor the appeal of an adverse verdict. Because Lubrizol's attorneys thought that National Union would cover any liability in excess of the deductible, they did not seek authority from Lubrizol to contribute more than $5 million toward the settlement.

During mediation, when it became apparent that James would not settle for less than $5 million, Cortese for the first time revealed to Lubrizol that National Union believed that the claim was not covered by the policy. Ultimately, the mediation was unsuccessful and the parties did not reach an agreement. Two days later, Cortese called Day on the telephone and reiterated National Union's position that the policy did not cover the claim. On March 13, 2002, almost two weeks after the call, Valvoline settled the James lawsuit and Lubrizol agreed to indemnify Valvoline in the amount of $8.3 million plus approximately $280,000 in workers' compensation. Later, James's

4

counsel stated in an affidavit that he would have recommended, and his client would likely have accepted, a settlement of $7.5 million if Lubrizol had offered it during the mediation. The record contains no evidence that either Valvoline or Lubrizol was prepared to offer as much as $7.5 million at that time.

On March 13, 2002, the same day as the James settlement, Lubrizol filed this action in diversity against National Union. Lubrizol sought a declaratory judgment that the umbrella policy covered Valvoline's claim for indemnification, and alleged breach of contract, bad faith denial of a claim, and bad faith refusal to settle. Eventually, National Union moved for summary judgment, and the district court granted the motion on January 20, 2005. The district court held that the contract between Valvoline and Lubrizol was not an "insured contract" under the policy, that the contract did not legally obligate Lubrizol to indemnify Valvoline for the defense and settlement of the James case, and that the doctrines of waiver and estoppel were not applicable. Lubrizol has appealed each of the district court's holdings.

## I. Standard of Review

This court reviews the district court's decision to grant summary judgment *de novo*. *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The party moving for summary judgment bears the initial burden of production under Rule 56. The burden may be satisfied by presenting affirmative evidence that negates an element of the non-movant's claim or by demonstrating "an absence of evidence to support the non-moving party's case." *Celotex Corp. v.*

5

*Catrett*, 477 U.S. 317, 325 (1986). If the movant meets this burden, the non-movant must respond "by affidavits or as otherwise provided in [Fed. R. Civ. P. 56]," and "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e).

The substantive law identifies which specific facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To avoid summary judgment, the non-movant must "make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 256 (citing *Adickes v. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). However, the non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "[T]he mere existence of some alleged factual disputes between the parties will not defeat an otherwise properly supported motion" for summary judgment. *Anderson*, 477 U.S. at 247-48.

## II. The Indemnity Agreement Under Ohio Law

The parties agree that the matters in dispute in this case are governed by Ohio law. The pertinent Ohio law provides:

> Where an employee brings a personal injury action against a company other than his employer, and that company files a third-party complaint against the employer (who is a [workers' compensation program] complying employer) based upon an indemnification agreement between the company and the employer, summary judgment may properly be granted to the employer on the third-party complaint if the indemnification agreement does not specifically waive the employer's immunity under Section 35, Article II of the Ohio Constitution and R.C. 4123.74.

*Davis v. Consol. Rail Corp.*, 442 N.E.2d 1310, 1311 (Ohio Ct. App. 1981), *cited with approval in Kendall v. U.S. Dismantling Co.*, 485 N.E.2d 1047, 1051 (Ohio 1985). *See also Pentaflex, Inc. v.*

6

*Express Servs. Inc.*, 719 N.E.2d 1016 (Ohio Ct. App. 1998); OHIO REV. CODE § 4123.74 (2006).

In *Davis v. Consolidated Rail*, plaintiff Billy Davis was a forklift operator employed by Ford but injured while loading automotive transmissions onto a Conrail boxcar. The record was silent as to whose negligence, if any, caused the injury. After obtaining workers' compensation benefits, Billy Davis sued Conrail for personal injury. Conrail filed a third-party complaint against Ford based on an indemnification agreement.[1] The court reasoned that the Ohio workers' compensation program provided a complying employer with immunity from law suits resulting from occupational injuries, under authority of the Ohio Constitution. *Davis*, 442 N.E.2d at 1312. The court therefore affirmed the grant of summary judgment in favor of the employer, Ford. *Id.* at 1313.

In *Kendall v. U.S. Dismantling*, plaintiff Samuel Kendall was employed by U.S. Dismantling but injured while disassembling pipes at American Cyanamid. Samuel Kendall and his wife sued American Cyanamid for personal injury, alleging negligence. American Cyanamid filed a third-party complaint against U.S. Dismantling based on an indemnification agreement.[2] Citing to *Davis*, the

---

[1]The Ford-Consolidated Rail agreement was quoted in the case:

> "The Industry [Ford] also agrees to release, indemnify and hold harmless the Railroad [Conrail], its officers, employes and agents, for loss, damage or injury from any act or omission of the Industry, its officers, employes and agents, to the person or property of the parties hereto and their officers, employes and agents, and to the person or property of any other person or corporation, while on or about the side track. If any claim or liability, other than from fire caused by locomotives as aforesaid, shall arise from the joint or concurring negligence of both parties hereto it shall be borne by them equally."

*Davis*, 442 N.E.2d at 1312 ("employes" misspelled in original).

[2]The U.S. Dismantling-American Cyanamid agreement was quoted in the case:

> "Subject to the terms and conditions of this contract, CONTRACTOR [appellee U.S. Dismantling] shall be liable for and protect, defend, indemnify and save CYANAMID, its officers, directors, and employees harmless against any and all claims, losses, demands, causes of action, and any and all related costs and expenses, of every kind and character (including reasonable attorneys fees) suffered by the parties hereto, their employees and/or any other person or corporation, on account of personal injuries or death, or damages to property occurring, growing out of, incident to, or

7

Ohio Supreme Court recognized the employer's immunity from a workplace injury lawsuit and restated the requirement that an "express and specific" statement must be included in the indemnification agreement in order to waive that immunity. *Kendall*, 485 N.E.2d at 1051. Because the agreement did not contain the requisite specific language of waiver, the Ohio Supreme Court affirmed the trial court's dismissal of the complaint against the employer, U.S. Dismantling. *Id.*

In the present case, plaintiff Lynn James was employed by Lubrizol but injured while servicing equipment at Valvoline's Cincinnati, Ohio, facility. The record is silent as to whose negligence caused the injury. Lynn James obtained workers' compensation benefits, but sued Valvoline for personal injury, alleging negligence. Valvoline implicated Lubrizol through the aforementioned indemnification agreement in the equipment purchase contract. The structure of the agreement in the present case is virtually identical to those in the cited cases. Accordingly, under prevailing Ohio law, Lubrizol is immune from a third-party claim by Valvoline. *See Davis*, 442 N.E.2d at 1312; *Kendall*, 485 N.E.2d at 1051. The indemnity agreement between Valvoline and Lubrizol is unenforceable because it does not contain the language necessary to waive Lubrizol's immunity under Ohio's statute and Constitution.

The district court reached a similar result through the application of *Drewery v. Daspit Brothers Marine Divers, Inc.*, 317 F.2d 425 (5th Cir. 1963), which refused to connect employer and employee through vicarious liability without express language in the contract. However, application

resulting directly or indirectly from the performance by CONTRACTOR hereunder *whether such loss, damage, injury or liability is contributed to by the negligence of CYANAMID* or its employees and whether due to imperfections of any material furnished by CYANAMID, or by premises themselves or any equipment thereon, whether latent or patent, or from other causes whatsoever; *except that CONTRACTOR shall have no liability for damages or the costs incident thereto caused by the sole negligence of CYANAMID*."

*Kendall*, 485 N.E.2d at 1049-50 (emphasis in original).

of *Drewery* to the present circumstances is necessarily abridged by the holdings of *Davis* and *Kendall*. Lubrizol argues that this court should analyze the agreement under Allen v. Standard Oil Co., 443 N.E.2d 497 (Ohio 1982), which declined to adopt *Drewery*, and instead holds:

> When an indemnitor expressly agrees to indemnify an indemnitee except in certain specified instances and it is determined that the exceptions do not pertain, then indemnitor is obligated to indemnify the indemnity under the terms of the agreement.

Despite any apparent contradiction between the limitation of *Davis* and the broad enforcement of *Allen*, *Davis* "has not been implicitly overruled by *Allen*." *Ehrhardt v. Baltimore & Ohio R.R.*, 493 N.E.2d 264, 266 (Ohio Ct. App. 1985), *overruled on other grounds by King v. Safeco Ins. Co.*, 583 N.E.2d 1051, 1504 (Ohio Ct. App. 1990). The Ohio Supreme Court reconciled its rules as follows:

> Certain kinds of indemnity agreements are forbidden under Ohio law. See, *e.g.,* R.C. 2305.31 and *Kendall v. U.S. Dismantling Co.* (1985), 20 Ohio St.3d 61, 20 OBR 360, 485 N.E.2d 1047 (construction contracts); R.C. 4123.82 and *Ledex, Inc. v. Heatbath Corp.* (1984), 10 Ohio St.3d 126, 10 OBR 449, 461 N.E.2d 1299 (workers' compensation benefits); *Cumpston v. Lambert* (1849), 18 Ohio 81 (illegal agreements). In the absence of specific public policy exceptions, however, an agreement to indemnify another is generally enforceable. *See*, *e.g., Allen v. Standard Oil Co., supra.*

*Worth v. Aetna Cas. & Sur. Co.*, 513 N.E.2d 253, 257 (Ohio 1987). Therefore, we hold that the indemnity agreement between Lubrizol and Valvoline, as applied to the circumstances of this case, is not enforceable under Ohio law.

### III. The Indemnity Agreement Under the Terms of the Insurance Policy

The oddity of this case is that Lubrizol seeks to enforce the indemnification agreement, and to assume liability from which Ohio law immunizes it. But, even if the indemnity agreement were enforceable under Ohio law, we agree with the district court that under the plain language of Lubrizol's umbrella insurance policy with National Union, the indemnity agreement could not be

an "insured contract." National Union's umbrella policy provides that an insured contract is one under which Lubrizol "assumes the tort liability of another party to pay for Bodily Injury . . . to a third person or organization." Therefore, in order to determine whether Lubrizol's indemnity agreement is an insured contract under the policy, we must first look to the indemnity agreement itself and determine whether the agreement obligated Lubrizol to assume the tort liability of another. When interpreting an indemnity agreement between commercial parties of equal bargaining power, a court bound by Ohio law must construe the words used in the agreement "in their ordinary and popular sense." *Glaspell v. Ohio Edison Co.*, 505 N.E.2d 264, 267 (Ohio 1987). According to the Ohio Supreme Court, "the first general maxim of interpretation . . . is, that it is not allowable to interpret what has no need of interpretation. When a . . . [writing] is worded in clear and precise terms; when its meaning is evident, and tends to no absurd conclusion, there can be no reason for refusing to admit the meaning which . . . [it] naturally presents." *Allen*, 443 N.E.2d at 499 (quoting *Lawler v. Burt*, 7 Ohio St. 340, 350 (Ohio 1857)).

The agreement in this case is unambiguous. It provides that Lubrizol and Valvoline will indemnify one another for "claims, demands, and causes of action . . . for personal injury or death, or for loss of or damage to property *that results from the indemnifying party's negligence* or willful misconduct hereunder." The agreement, of course, is mutual. Hence, it is appropriate to look at it from the perspective of each of the parties singly. So, for example, from the perspective of Lubrizol, the indemnification agreement provides:

> [] Lubrizol shall indemnify, defend, and hold [Valvoline] harmless from claims, demands, and causes of action asserted against [Valvoline] by [Lubrizol's employees] for personal injury or death, or for loss of or damage to property that results from [Lubrizol's] negligence or willful misconduct hereunder.

10

> Where personal injury, death, or loss of or damage to property is the result of the joint negligence or misconduct of Valvoline and Lubrizol, each party's duty of indemnification shall be in proportion to that party's allocable share of such joint negligence or misconduct.

Therefore, by the plain language of the agreement, Lubrizol, as the indemnifying party, is required to indemnify Valvoline only for damage resulting from Lubrizol's own negligence or willful misconduct. In the second clause, above, the agreement provides that where the negligence is joint, each party will be responsible only for its allocable share. The indemnity agreement cannot, then, be an insured contract under the umbrella insurance policy's particular language, because it does not require the assumption by Lubrizol of the tort liability of another party. Because the indemnity agreement is not an insured contract, it does not obligate National Union to cover Lubrizol's payment to Valvoline. The district court correctly granted summary judgment on this issue.

## IV. Necessary Prerequisite - Negligence

Even if we were to agree with Lubrizol that the indemnity agreement is enforceable under Ohio law and is also an insured contract, we would still be required to affirm the judgment of the district court. Under the indemnity agreement, Lubrizol agreed to compensate Valvoline only for claims arising from Lubrizol's negligence or willful misconduct, and Lubrizol has made no showing of negligence in this case. Lubrizol asserts that its employee, James, was negligent and that his negligence must be imputed to Lubrizol. There has been no adjudication, however, of the issue of negligence, and the settlement agreements do not provide any basis upon which we could determine whether James's injuries resulted to any degree whatever from his own negligence. There is simply no evidence before this court that James was negligent in any way.

The lack of evidence of Lubrizol's negligence would not be problematic if National Union

11

had agreed to be bound by Lubrizol's characterization of its own claims. The policy, however, provides that when there is an occurrence that might give rise to a claim, Lubrizol is required to provide National Union with copies of all relevant documents, access to any relevant information, and cooperation in investigation of the occurrence. Furthermore, the policy specifies that "[n]o Insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent." And finally, the policy explicitly provides that Lubrizol has no legal right of action against National Union under the policy unless the amount owed by Lubrizol to a third party, such as Valvoline, "has been determined with our consent or by actual trial and final judgment." In this case, National Union did not consent to the settlement amount, and the James case never went to trial. In fact, Lubrizol sued National Union on the same day it settled with James. There is nothing in the record to support a conclusion that Lubrizol was negligent in any way, other than Lubrizol's unsupported allegation, and we cannot bind National Union with Lubrizol's bare assertion when it has not contractually agreed to be so bound.

In order to avoid summary judgment under *Celotex*, Lubrizol had the burden of producing evidence from which the finder of fact could conclude that Lynn James's injuries were the result of Lubrizol's negligence. Because Lubrizol has offered no proof of a key element of its claim, we hold that the district court did not err in granting summary judgment to National Union.

## V. Waiver and Estoppel

The record, viewed in the light most favorable to Lubrizol, reflects that National Union suggested as early as December 2001, that it would cover the claim, formally acknowledged coverage on January 28, 2002, and then disclaimed coverage on March 1, 2002. During this period, Valvoline's counsel continued to handle the case, presumably on behalf of Lubrizol, with some input

12

from National Union. As noted above, Cortese attended the mediation conference and informed Lubrizol in the middle of that conference that National Union would not cover the claim.

From this, Lubrizol argues that even if its claim is not actually covered by the umbrella policy, National Union either waived its right to deny coverage or is estopped from denying coverage at this point, due to its prior conduct. The district court held that the doctrines of waiver and estoppel were not applicable. As this issue is before us on summary judgment, we review it *de novo*.

"It is axiomatic that an insurance company is under no obligation to its insured, or to others harmed by the actions of an insured, unless the conduct alleged of the insured falls within the coverage of the policy." *Gearing v. Nationwide Ins. Co.*, 665 N.E.2d 1115, 1117 (Ohio 1996). The insured generally has the burden of demonstrating coverage under the policy. *Chicago Title Ins. Co. v. Huntington Nat'l. Bank*, 719 N.E.2d 955, 959 (Ohio 1999). To do so, "[t]he insured must show facts sufficient to prove that its loss was within the description of the policy." *Sterling Merchandise Co. v. Hartford Ins. Co.*, 506 N.E.2d 1192, 1198 (Ohio Ct. App. 1986). As a general rule, the doctrines of waiver and estoppel may not be used to expand the coverage described in the policy. *Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd.*, 597 N.E.2d 1096, 1103-04 (Ohio 1992).

As exceptions to the ordinary rule, waiver and estoppel are necessarily limited. *See Hounshell v. Am. States Ins. Co.*, 424 N.E.2d 311, 314 (Ohio 1981). "Waiver and estoppel should apply only in those cases where [1] there is a clear misrepresentation of fact or [2] when the insurer provides a defense without reserving its rights for a period sufficient to prejudice the insured's ability to conduct its own defense." *Turner Liquidating v. St. Paul Surplus Lines Ins. Co.*, 638 N.E.2d 174, 179 (Ohio Ct. App. 1994). The district court analyzed the case under the second circumstance and, relying on *Arkwright-Boston Mutual Ins. Co. v. Aries Marine Corp.*, 932 F.2d 442, 445 (5th Cir.

1991), concluded that National Union's participation in Lubrizol's defense was insufficient to support waiver or estoppel. On appeal, Lubrizol insists that it was asserting the first circumstance - misrepresentation of fact. In its own words, "Lubrizol's position is that it was prejudiced when National Union did not inform Lubrizol of its change in position on coverage until during the settlement mediation, when it was too late to obtain additional settlement authority."

"Which theory, either that of waiver or estoppel, should be applied in a given case, is not always completely clear." *Hounshell*, 424 N.E.2d at 313. Waiver is the voluntary relinquishment of a known right and may be express or implied. *State ex rel. Wallace v. State Med. Bd. of Ohio*, 732 N.E.2d 960, 965 (Ohio 2000). "Waiver exists when an insurer, by acts or declarations, evidences a recognition of liability under the policy." *Leader Natl. Ins. Co. v. Eaton*, 696 N.E.2d 236, 239 (Ohio Ct. App. 1997). Specifically, Ohio courts have found instances of waiver when an insurer paid a claim, *Id.*, or when an insurer actually provided a defense without a reservation of rights. *Turner Liquidating*, 63 N.E.2d at 299. Here, National Union neither paid the claim nor provided a defense at all, but mistakenly admitted coverage of the claim and corrected that mistake once it was discovered — a mere 31 days later, before settlement, and before trial. We decline to expand the scope of waiver and impose a rule that would prevent insurers from correcting mistakes in this manner. Therefore, we conclude that waiver is not applicable under the present circumstances and Lubrizol's theory of the case.

"The doctrine of equitable estoppel is derived from the concept that one cannot change his position once another has acted in reliance thereon and, as an equitable rule, it may be invoked whenever the facts and circumstances warrant." *Armco, Inc. v. Reliance Nat'l. Ins. Co.,* 19 F. Supp. 2d 807, 816 (S.D. Ohio 1998). "Equitable estoppel prevents a party from exercising rights which

14

he might otherwise have had against one who has in good faith relied upon the conduct of that party." *Lewis v. Motorists Ins. Cos.,* 645 N.E.2d 784, 790 (Ohio Ct. App. 1994). Ultimately, the purpose of equitable estoppel is "to prevent actual or constructive fraud and to promote the ends of justice." *Ohio State Bd. of Pharmacy v. Frantz*, 555 N.E.2d 630, 633 (Ohio 1990).

The doctrine of equitable estoppel has four elements: (1) a factual misrepresentation, (2) which is misleading, (3) and induces reasonable and good faith reliance, (4) to the detriment of the relying party. *Helman v. EPL Prolong, Inc.*, 743 N.E.2d 484, 495 (Ohio Ct. App. 2000). In the present case, National Union acknowledged coverage on January 28, 2002, but then reversed its position on March 1, 2002. For purposes of this analysis, we will assume that the initial acknowledgment of coverage was (1) a factual misrepresentation, (2) that was misleading to Lubrizol, (3) who acted in reasonable and good faith reliance. The question is whether that reliance actually caused Lubrizol some detriment, i.e., whether Lubrizol was prejudiced by that reliance.

To meet this element and make out a prima facie case of estoppel, Lubrizol had to demonstrate that it was prejudiced by its reliance on National Union's initial, but mistaken, acknowledgment of coverage. Lubrizol's merely having been given an erroneous statement of coverage, without more, would be insufficient to justify the exception to the general rule. *See McDermott v. Cont'l Ins. Co.*, 591 N.E.2d 251, 253 (Ohio Ct. App. 1990); *Hartory v. State Farm Auto. Mut. Ins. Co.*, 552 N.E.2d 223, 225-26 (Ohio Ct. App. 1988). However, Ohio courts have cited as an example of demonstrable prejudice "the loss of a favorable settlement opportunity." *Dietz-Britton v. Smythe, Cramer Co.*, 743 N.E.2d 960, 968 (Ohio Ct. App. 2000); *see also Ins. Co. of N. Am. v. Travelers Ins. Co.*, 692 N.E.2d 1028, 1039-40 (Ohio Ct. App. 1997).

Lubrizol's theory can be summarized as follows. Because Cortese had informed it that

15

National Union would cover the claim, Lubrizol believed that it was not liable for any settlement amount above the $5 million deductible. As long as negotiations were above $5 million, Lubrizol had no incentive to settle. Once Lubrizol learned that it was not covered — that it was in fact liable for the whole claim — it hurried to settle for the best deal it could get; $8.3 million. But, Lubrizol claims, if it had known earlier that it was not covered, then it would have had an incentive to settle earlier. Specifically, Lubrizol produced an affidavit from Lynn James' attorney, John Stevenson, in which Stevenson attested that James would likely have settled at the mediation on February 27, 2002, for $7.5 million. Therefore, Lubrizol's theory concludes that National Union's misrepresentation of coverage caused it to forgo a favorable settlement opportunity and resulted in an $800,000 detriment. Of course, the district court found — and we agree — that there is no record evidence that this position was contemporaneously disclosed to Lubrizol.

Following its theory, however, Lubrizol argues that it did set forth a prima facie showing of prejudice by way of Stevenson's affidavit. In a rather expansive view of the summary judgment standard, Lubrizol insists that, in granting all reasonable inferences in favor of the non-moving party, the court must accept Mr. Stevenson's attestation as true and conclusive. But James' position is only half of the story. In addition to evidence of James' willingness, Lubrizol needed also to produce some evidence that it, Lubrizol, would also have agreed to settle for $7.5 million on February 27, 2002, had it known the truth. Otherwise, there is merely an assertion that one side was willing to settle under its own terms — without a corresponding assertion by the other side, there being no inference of a probable agreement, no presumably inevitable $7.5 million settlement, and no prima facie showing of prejudice. Lubrizol failed to produce evidence of its own willingness.

If Lubrizol had produced an affidavit, in accordance with Fed. R. Civ. P. 56(e), by someone

with authority to settle, attesting that it would have settled for $7.5 million on February 27, 2002, if only it had known that National Union was disclaiming coverage, then the credibility of those two assertions (Stevenson's and Lubrizol's) could have been posed to a jury and, if believed, possibly resulted in a finding that Lubrizol was prejudiced by its reliance on National Union's misstatement of coverage. *See JRC Holdings, Inc. v. Samsel Servs. Co.*, 850 N.E.2d 773, 779 (Ohio Ct. App. 2006) (ordinarily, estoppel is a question for a jury). Of course, this hypothetical scenario presents a question not presently before this court, i.e., whether such a self-serving, after-the-fact affidavit would provide for an inference sufficiently reasonable to create a material issue. *See, e.g., K. Bell & Assoc., Inc. v. Lloyd's Und.*, No. 92 Civ. 5249, 1997 WL 96551, at *9 (S.D.N.Y. Mar. 5, 1997) (vacated and dismissed for lack of subject matter jurisdiction) (deriding a similar argument with the conclusion that "if [the insured's] 'I would have tried to settle' testimony were held to be sufficient to satisfy the prejudice prong, [then] the prejudice prong would disappear from the estoppel standard — virtually every insured could make the same generalized claim").

As it turns out, however, we need not address this question. Lubrizol failed to satisfy even this most minimal threshold of producing an affidavit from someone at Lubrizol who had both the authority and willingness to settle earlier, on James' alleged terms. Accordingly, Lubrizol failed to satisfy its burden to produce some evidence of a material fact. National Union was entitled to summary judgment on the issue of waiver and estoppel.

## VI. Motion to compel discovery

Finally, Lubrizol argues, allegedly in aid of its waiver and estoppel claim, that the district court should have granted its motion to compel National Union to produce a post-mediation memorandum drafted by Cortese, in addition to records of attorney-client communications between

17

Cortese and National Union's outside counsel. The district court denied the motion because it found that the items were privileged. Lubrizol nonetheless argues on appeal that the requested discovery is relevant to "whether Lubrizol reasonably relied on National Union's representations and whether such reliance prejudiced Lubrizol." We find it unnecessary to reach the merits of the district court's ruling because, under Ohio law, reasonable reliance alone cannot establish waiver or estoppel against an insurer. Lubrizol's reliance on Cortese's representations may be presumed under the circumstances of this case, and as discussed above, this reliance is not dispositive.

## VII. National Union's alternative argument

National Union argues that the district court could have granted summary judgment in its favor on grounds that Lubrizol's payment to Valvoline violated a provision in the policy that prevents an insured from making voluntary payments. Because we find that summary judgment was properly granted on other grounds, we decline to reach this issue.

The judgment of the district court is **AFFIRMED**.